Jeff RICHARDSON, an individual; Joshua Hansen, a minor, by and through his guardian ad litem Bonnie Wilde; Rodney Wilde, an individual; and Bonnie Wilde, an individual, Plaintiffs and Appellees,

v.

MATADOR STEAK HOUSE, INC., a Utah corporation; Matador Steak House of Price, Inc., a Utah corporation; Terry Fry, an individual; Gerry Carlson, an individual; Melanie Tomlinson, an individual; Jerry Fry, an individual; John Does 1–5, and Jane Does 1–5, Defendants and Appellants.

No. 950511.

Supreme Court of Utah.

Nov. 18, 1997.

Paul M. Durham, J. Mark Gibb, Salt Lake City, for Plaintiffs and Appellees.

Dale J. Lambert, Mark L. Anderson, Salt Lake City, for Defendants and Appellants.

STEWART, Associate Chief Justice:

This case is here on an interlocutory appeal to decide whether family members of an intoxicated person who is killed as a result of his or her intoxication have a claim for relief against the provider of alcohol under the Utah Dramshop Liability Act. Utah Code Ann. § 32A–14–101. Defendants Matador Steak House and its agents attack the district court's entry of summary judgment that denied their motion to dismiss plaintiffs' claim for relief under the Dramshop Act.

The complaint alleges that employees of Matador Steak House served Berdette Richardson alcoholic beverages on March 19, 1993, when she was twenty years old and under the legal drinking age, *see* Utah Code Ann. § 32A–12–203, that Berdette became intoxicated on Matador's premises, and that after leaving the Steak House, she lost control of the vehicle she was driving and was killed in the crash. Shortly after her death, her blood alcohol content was measured at 0.17%, well in excess of the statutory blood alcohol limit for motorists in Utah, which is 0.08%. *See* Utah Code Ann. § 41–6–44(2)(a)(i) (Supp.1997). The plaintiffs are Jeff Richardson, who was Berdette's husband; Joshua Hansen, her child; and Bonnie and Rodney Wilde, her parents. They allege three claims for relief; the first is based on strict liability under Utah's Dramshop Act, the second is based on common law negligence, and the third is what plaintiffs style "piercing the corporate veil." [1]

Pursuant to rule 12(b)(6), Matador moved to dismiss the strict liability and common law claims for failure to state a claim. Matador argued that plaintiffs had no claim for relief under either the Dramshop Act or common law negligence because the Dramshop Act establishes an exclusive remedy for actions against providers of alcohol.

The district court ruled that plaintiffs stated a valid claim for relief based on strict liability under the Dramshop Act. The court also ruled that the Act provides the exclusive remedy for actions against providers of alcohol and preempts all common law claims for relief. Defendants filed, and we granted, a petition for interlocutory appeal from the trial court's order denying defendants' motion to dismiss the claim under the Dramshop Act.

On appeal from orders for failure to state a claim upon which relief can be granted, we take as true all well-pled allegations of fact in the complaint and all reasonable inferences from those facts. *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990). We review for correctness the trial court's rulings of law. *E.g., Russell v. Standard Corp.*, 898 P.2d 263, 264 (Utah 1995).

## I. PLAINTIFFS' CLAIM UNDER THE DRAMSHOP ACT

In 1981, Utah enacted the first dramshop act as part of the Intoxicating Liquor Code. *See* Utah Code Ann. § 32–11–1 (Interim Supp.1981). The act established a claim for relief against persons who furnished intoxicating liquor to others in violation of statutes that prohibited giving or selling liquor to minors, intoxicated persons, habitual drunkards, or interdicted persons. *See* Utah Code Ann. §§ 16–6–13.1(8)(d) (1973), 32–1–36.5(*l*) (1974); 32–7–14 (1974), 32–7–24(b), (c) (1974). In 1985, the Intoxicating Liquor Code was repealed and replaced by the Alcoholic Beverage Control Act, Utah Code Ann. Title 32A, which contained the Dramshop Act as enacted in 1981, with minor modifications. Subsequent minor

---

1. There is no claim for relief known as "piercing the corporate veil." Piercing the corporate veil has to do with making persons liable who otherwise would be shielded from personal liability because of the existence of a corporation. It therefore merely determines who may be sued and does not in itself constitute a distinct cause of action.

amendments were also made in 1989 and 1990. The provision in effect at the time of Berdette Richardson's accident, Utah Code Ann. § 32A–14–101 (1991), read:

(1) Any person who directly gives, sells, or otherwise provides liquor, or at a location allowing consumption on the premises, any alcoholic beverage, to the following persons, and by those actions causes the intoxication of that person, is liable for injuries in person, property, or means of support to any third person, or to the spouse, child, or parent of that third person, resulting from the intoxication:[2]

(a) any person under the age of 21 years;

(b) any person who is apparently under the influence of intoxicating alcoholic beverages or products or drugs;

(c) any person whom the person furnishing the alcoholic beverage knew or should have known from the circumstances was under the influence of intoxicating alcoholic beverages or products or drugs; or

(d) any person who is a known interdicted person.

Subsection (1) provides a claim for relief to two categories of injured persons: (1) "third persons" and (2) "the spouse, child, or parent of that third person." *Horton v. Royal Order of the Sun* held that "the Dramshop Act gives a cause of action to injured third parties, but not to the intoxicated person." 821 P.2d 1167, 1167 (Utah 1991); *see also Beach v. University of Utah,* 726 P.2d 413, 417 (Utah 1986). Thus, Berdette Richardson was not a "third person" within the meaning of that term as used by section 32A–14–101(1). It follows that Berdette Richardson's family members are not within the category of "spouse, parent, or child" as stated in the statute.

The district court held that plaintiffs had valid claims for relief under the Act for Berdette Richardson's death because each plaintiff was a "third person" within the meaning of subsection (1). In the abstract, that construction has some plausibility. But the term "third person" must be construed within its statutory context, not in the abstract. *Moreno v. Board of Educ. of Jordan Sch. Dist.,* 926 P.2d 886, 889 (Utah 1996) (" 'One of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject.' " (quoting *Mountain States Tel. & Tel. Co. v. Payne,* 782 P.2d 464, 466 (Utah 1989))).

If we were to construe the term "third person" to include the spouse, child, or parent of an intoxicated person, as the trial court did, that construction would not be true to the context of the statute. The relevant statutory language states:

Any person who directly gives, sells, or otherwise provides ... at a location allowing consumption on the premises, any alcoholic beverage, to the following persons, and by those actions causes the intoxication of that person, is liable for injuries in person, property, or means of support to *any third person,* or to the *spouse, child, or parent* of *that third person,* resulting from the intoxication.

Utah Code Ann. § 32A–14–101 (1991) (emphasis added).

While it is clear that a spouse, child, or parent of a "third person" may recover under the Act, it makes no sense to construe "third person" to include in its meaning a "spouse, child, or parent," as the trial court did. The statute was intended to protect two categories of persons: (1) those *directly* injured by a drunk driver in an accident (i.e., "third person[s]"), and (2) those closely related to the third person ("spouse, child, or parent"). In this case, plaintiffs did not suffer direct injuries in an accident caused by an intoxicated person, and they are not therefore the "third person[s]" to which the statute refers. A contrary reading of the statute would result in an untenable position. If the term "third person" were read to include the spouse, child, or parent of an intoxicated person, then the language that allows recov-

---

**2.** The statute was recently amended and substantially reorganized. The category of "spouse, child, or parent" has been replaced by the term "heir, as defined in section 78–11–6.5." *See* Utah Code Ann. § 32A–14–101 (Supp.1997).

ery to a "spouse, child, or parent of that third person" would necessarily mean that the "spouse, child[ren], or parent[s]" of the intoxicated person's spouse, child, or parent could also recover. That would mean that an intoxicated person's grandparents, grandchildren, children's and parent's spouses, and certain other in-laws could also sue. In our view, that reading is unreasonable and cannot be what the Legislature intended. In sum, the Dramshop Act precludes a cause of action against Matador by plaintiffs in this case.

## II. PLAINTIFFS' COMMON LAW NEGLIGENCE CLAIM AGAINST THE PROVIDER OF ALCOHOL

In addition to ruling that plaintiffs had a valid claim for relief against Matador under the Dramshop Act, the trial court also ruled that the Act is the exclusive remedy for claims by injured third persons and their families against providers of alcohol. The court held that this exclusivity precluded plaintiffs' common law negligence claim. We granted defendants' petition for an interlocutory appeal to review the trial court's ruling that plaintiffs had a claim for relief under the Act, and we have now held that the trial court erred on that issue. Plaintiffs did not cross-petition for interlocutory appeal to review the trial court's ruling that the Act preempted common law negligence claims against providers of alcohol.

For the first time, in their appellees' brief on defendants' appeal, plaintiffs attack the trial court's ruling on statutory preemption. Matador, in its reply brief, suggests that the Court should overlook plaintiffs' failure to cross-petition and address the preemption issue so as to avoid a further appeal after remand and entry of final judgment.

We decline the parties' invitation to ignore our procedural rules and decide the preemption issue. That issue requires a complex analysis of legislative intent, *see Retherford v. AT & T Communications,* 844 P.2d 949, 964–66 (Utah 1992), and the purpose, nature, and limitations of the strict liability action authorized by the Dramshop Act and the compatibility and consistency of that action and its limitations with a common law negligence action against a provider of alcohol. *See Yost v. State,* 640 P.2d 1044, 1046 (Utah 1981); *Rees v. Albertson's, Inc.,* 587 P.2d 130, 133 (Utah 1978).

Although we have held that appellate courts may affirm a lower court's ruling on a ground other than the one relied on by that court, *see State v. South,* 924 P.2d 354, 357 (Utah 1996), there is a critical distinction between different grounds for a ruling and different claims for relief. *Id.* A ruling may be based on various grounds. If a lower court reaches a correct ruling on a ground that is invalid, a reviewing court may nevertheless sustain the ruling on the basis of a valid ground. *Id.* Plaintiffs asserted two claims for relief. We have held above that the trial court erred in sustaining plaintiffs' claim under the Dramshop Act. Plaintiffs' common law claim is not an alternative ground for sustaining plaintiffs' Dramshop Act claim. Plaintiffs' common law claim is an entirely different claim for relief, and we cannot address the validity of that claim on the pretext that it might be a valid alternative ground for sustaining the result in this case.[3] A cross-appeal or cross-petition was therefore necessary to raise that issue.[4]

For these reasons, we decline to address the issue whether the trial court erred in holding that a common law negligence action against a provider of alcohol is preempted by the Dramshop Act. The trial court's ruling

---

**3.** Different claims for relief invoke different theories of recovery, are subject to differing limitations and defenses, and may give rise to different species of relief. This is so notwithstanding the fact that multiple claims for relief may arise out of the same operative facts and may result in similar recoveries. Because differing claims may produce different damage awards, the effect of allowing a party to try to revive a claim for relief is to modify the trial court's judgment or decision on the merits, and that is not permitted

in a responsive brief. *South,* 924 P.2d at 355 (citing *Langnes v. Green,* 282 U.S. 531, 538–39, 51 S.Ct. 243, 246, 75 L.Ed. 520 (1931)).

**4.** We note that no final judgment has been entered in this case, so although plaintiffs could have cross-petitioned for interlocutory appeal, they were not obligated to do so. They may still appeal any denial of a claim not adjudicated in this appeal upon entry of final judgment.

351

that plaintiffs could state a claim for relief under the Dramshop Act is reversed.

ZIMMERMAN, C.J., and HOWE, DURHAM and RUSSON, JJ., concur in Associate Chief Justice STEWART's opinion.