2000 UT 23

**Brandon GILGER and Robert J. Montoya, Plaintiffs and Appellants,**

v.

**Melissa HERNANDEZ, Defendant and Appellee.**

No. 980031.

Supreme Court of Utah.

Jan. 28, 2000.

David R. Maddox, Sandy, for plaintiffs.

Lewis B. Quigley, Clifford J. Payne, Salt Lake City, for defendant.

ZIMMERMAN, Justice:

¶ 1 Plaintiffs Brandon Gilger and Robert Montoya appeal the trial court's order dismissing their complaint for failure to state a claim upon which relief may be granted. In their complaint, Gilger and Montoya alleged that Melissa Hernandez, the defendant, was negligent "per se" for serving alcohol to minors, including Jason Martinez, in violation of Utah Code Ann. § 32A–12–203. They also allege that as a direct consequence of Hernandez's negligence, Martinez injured both plaintiffs. Gilger and Montoya further allege that defendant Hernandez had a "special relationship" with her guests, including plaintiffs, that imposed a tort duty of reasonable care on her which she breached by: (i) failing to properly supervise the party; (ii) refusing to call police when Martinez threatened other guests with physical violence; (iii) refusing to summon an ambulance after Martinez stabbed the plaintiffs; and (iv) preventing other guests from summoning emergency aid. We affirm the trial court on all counts, except that we reverse and remand on the negligence claims arising out of Hernandez's refusal to summon aid after Gilger and Montoya were stabbed and her prevention of another guest from summoning assistance.

¶ 2 On appeal from an order dismissing a complaint for failure to state a claim upon which relief can be granted, we assume all the facts alleged to be true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff. See Richardson v. Matador Steak House, Inc., 948 P.2d 347, 348 (Utah 1997) (citing Colman v. Utah State Land Bd., 795 P.2d 622, 624 (Utah 1990)); St. Pierre v. Edmonds, 645 P.2d 615, 616–17 (Utah 1982) (citing Barrus v. Wilkinson, 16 Utah 2d 204, 398 P.2d 207, 208 (1965)). In September of 1995, Hernandez hosted a party at her residence. She charged her guests five dollars for all the beer they wished to drink. During the course of the party she served beer to inebriated guests, including twenty-year-old Martinez. In the course of the evening, Martinez threatened to injure other guests with a gun or knife he claimed to possess. Nevertheless, Hernandez continued to provide him with beer and refused to call the police, even though other guests urged Hernandez to do so. As the evening wore on, some of Hernandez's guests escorted Martinez out of Hernandez's home, where Martinez stabbed and seriously wounded guests Gilger and Montoya. Although Hernandez knew of the stabbing, she refused to call for emergency aid to assist Gilger and Montoya and even grabbed the phone from a party guest who was attempting to call for help. Eventually guests were able to use a neighbor's phone to summon an ambulance.

¶ 3 Gilger and Montoya each filed an action against Hernandez seeking damages based on (i) negligence claiming that they had a special relationship with Hernandez and that she breached the duty she owed them and (ii) negligence per se based on Hernandez's serving alcohol to Martinez, who was a minor, in violation of section 32A–12–203 of the Code. Hernandez filed a motion to dismiss for failure to state a claim upon which relief could be granted. The trial court granted Hernandez's motion finding that "the law in Utah imposes no duty on a social host to protect a guest within the context of the facts in this case." The trial court made no findings regarding the negligence per se claim. On appeal, we review for correctness the trial court's decision that the plaintiffs alleged no facts that would support a claim. See Richardson, 948 P.2d at 348 (citing Russell v. Standard Corp., 898 P.2d 263, 264 (Utah 1995)); Barnard v. Wassermann, 855 P.2d 243, 246 (Utah 1993) (citing St. Benedict's Dev. Co. v. St. Benedict's Hosp., 811 P.2d 194, 196 (Utah 1991)).

¶ 4 We first address the negligence claim based on service of alcohol to a minor. We will then address the negligence claim based on breach of a duty said to arise out of a special relationship between the parties.

¶ 5 There is no question that under the allegations of the complaint, Hernandez violated Utah criminal law, section 32A–12–203(2) by providing beer to a minor. The plaintiffs would use that violation as a premise for asserting a common law negligence action against Hernandez grounded on the negligence per se doctrine. *See, e.g., Child v. Gonda*, 972 P.2d 425, 432 (Utah 1998) (explaining negligence per se). Hernandez asserts that the Utah Dramshop Act preempts any common law claims. We now address that issue.

¶ 6 The Dramshop Act was initially passed in 1981. *See* Utah Code Ann. § 32–11–1 (Supp.1981). It has been amended numerous times. *See id.* § 32A–14–1 (Supp.1985); *id.* § 32A–14–1 (Supp.1986); *id.* § 32A–14–1 (Supp.1989); *id.* § 32A–14–101 (Supp.1996); *id.* § 32A–14–101 (Supp.1997). Both parties agree that under the version of the Dramshop Act in place in September of 1995, the time of the events at issue, the Act did not impose liability upon social hosts who serve beer to minors. It stated in relevant part:

> (1) Any person who directly gives, sells, or otherwise provides liquor, or at a location allowing consumption on the premises, any alcoholic beverage, to the following persons, and by those actions causes the intoxication of that person, is liable for injuries in person, property, or means of support to any third person, or to the spouse, child, or parent of that third person, resulting from the intoxication:

> (a) any person under the age of 21 years;

> . . . .

> (5) The total amount of damages that may be awarded to any person pursuant to a cause of action under this chapter that arises after July 1, 1985 is limited to $100,000 and the aggregate amount which may be awarded to all persons injured as a

result of one occurrence is limited to $300,000.

> . . . .

> (7) Nothing in this chapter precludes any cause of action or additional recovery against the person causing the injury.

> . . . .

Utah Code Ann. § 32A–14–101 (1994). In section 32A–1–105(24)(b), the Code defines "liquor" so as to exclude "any beverage defined as a beer, malt liquor, or malted beverage that has an alcohol content of less than 4% alcohol by volume." *Id.* 32A–1–105(24)(b) (1991).

¶ 7 Thus, paragraph (1) of section 32A–14–101 imposes social host liability for resulting injuries only on "[a]ny person who directly gives, sells, or otherwise provides *liquor* . . . to [any of] the following persons [including a minor]." *Id.* § 32A–14–101(1) (emphasis added). Because of section – 105(24)(b)'s narrow definition of "liquor" as excluding beer, there is no social host dramshop liability for serving beer to a minor. On the other hand, the Act imposes liability for resulting injuries on anyone who provides any *"alcoholic beverage,"* which includes beer, to proscribed persons, including minors, only if it is provided at an establishment that sells alcohol for on-premises consumption. The term "location allowing consumption on the premises" does not include a private house.[1] We previously addressed this definition in *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 520 (Utah 1997), where we noted the statutory distinction between "alcoholic beverages," which includes beer, and "liquor" which does not.

¶ 8 Gilger and Montoya argue that because the Act does not impose dramshop liability on social hosts who serve beer to minors, and because it does not purport to bar general negligence liability, it cannot preempt any preexisting common law liability. It appears

---

1. The legislative history makes it clear that the "consumption on the premises" language was not intended to apply to a social host who provides beer at a private party. Previous versions of the Act contained language which made it illegal to serve liquor to intoxicated persons "in any house or on any premises." *Id.* §§ 32–11–1 (Supp.1981), 32–7–24(b) (1966) (repealed 1985). However, the language referring to section 32–7– 24, and its reference to serving liquor in a house, was deleted in 1985. The current definition of "premises" makes no reference to a "house" or "private residences." *See id.* § 32A–1–105(36) (1999); *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 520–21 (Utah 1997); *Sneddon v. Graham*, 821 P.2d 1185, 1188 n. 1 (Utah Ct.App. 1991).

that a majority of this court would hold that there was no preexisting common law liability for social hosts who serve alcohol to minors. In *Reeves v. Gentile*, 813 P.2d 111 (Utah 1991), this court stated that the Dramshop Act "provides for a cause of action, not available at common law." *See id.* at 116. However, a majority of this court has held that there is common law liability for commercial vendors selling beer to minors in violation of a statute. *See Mackay v. 7-Eleven*, 2000 UT 15, 995 P.2d 1233, *Rees v. Albertson's, Inc.*, 587 P.2d 130 (Utah 1978); *Yost v. State*, 640 P.2d 1044 (Utah 1981). Even if this court were to find that there was common law liability for social hosts who serve beer to minors, such liability would be preempted by the Dramshop Act.

¶ 9 Determining whether a particular statute preempts other law of inferior standing is essentially a question of legislative intent. *See Richardson*, 948 P.2d at 350 (citing *Retherford v. AT & T Communications*, 844 P.2d 949, 964–66 (Utah 1992)). Did the legislative body with the superior law-making power intend to exercise that power with respect to a particular subject in such a way as to exclude the coterminous exercise of law-making power by another? In the present situation, the legislature has the power to supersede court-made common law on the subject of negligence liability for providing alcohol to one who causes harm. The question is whether the legislative body intended to exercise that power and occupy the field by enacting the Dramshop Act. *See Richardson*, 948 P.2d at 350 (citing *Retherford*, 844 P.2d at 964–66); *see also Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) ("The question . . . is what the purpose of Congress was.").

¶ 10 Hernandez suggests that our analytical model for determining whether the Dramshop Act preempts any common law causes of action should be found in *Retherford v. AT & T Communications*, 844 P.2d 949 (Utah 1992). However, the *Retherford* preemption test only applies to a specific type of preemption: where the statute at issue offers a remedy for a specific type of injury caused by an act of the defendant and where the asserted common law causes of action, while based on the same facts, offer a remedy for a potentially different injury based on those same facts. *See id.* at 965. In such situations, we have held that the intent to preempt is determined by "the nature of the injury for which [the] plaintiff makes [the] claim, not the nature of the defendant's act which the plaintiff alleges to have been responsible for that injury." *Id.* (quotation omitted) (alterations in original). Because we do not face this narrow type of preemption claim here, we need not engage in the analysis laid out in *Retherford*, although it remains fully appropriate in situations for which it was designed.

¶ 11 Utah case law has addressed preemption several times, but we have not developed any detailed model for determining preemptive intent.[2] We find it analytically useful to look to the United States Supreme Court, which, over the years, has developed a preemption model in the context of addressing the circumstances under which a federal statute preempts a state statute. We find this same test helpful when addressing state law preemption, as where it is asserted that a state statute preempts a local governmental act or the common law. This analytical model was recently stated as follows:

[i] Sometimes courts, when facing the pre-emption question, find language in the . . . statute that reveals an explicit [legislative] intent to pre-empt [common] law. [ii] More often, explicit pre-emption language does not appear, or does not directly answer the question. In that event, courts must consider whether the . . . statute's "structure and purpose," or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent. [a] A . . . statute, for example, may create a scheme of [statutory] regulation "so pervasive as to make reasonable the inference that [the legislature] left no room for the [common law] to supplement it." [b] Alternatively, [statutory] law may be in "ir-

___

2. The exception to this statement is *Retherford* which provides a very specialized test for deter-mining the preemptive effect of narrowly drawn statutes.

reconcilable conflict" with [the common] law. Compliance with both ..., for example, may be a "physical impossibility," or, [c] the [common] law may "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of [the legislature]."

*Barnett Bank of Marion County v. Nelson,* 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996) (citations omitted); *see also Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 633, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

¶ 12 The Dramshop Act does not meet the first of these tests: it does not expressly preempt the common law insofar as social hosts serving beer are concerned. We therefore look to the second test: does the Act's "structure and purpose" reveal an intent to preempt? We address the statutory scheme. Since its enactment, the Act has imposed something akin to strict civil liability on commercial establishments and social hosts who give, sell, or otherwise provide liquor to specific classes of individuals who then become intoxicated and injure third parties. *See* Utah Code Ann. § 32A–14–101(1) (1994); *Stephens v. Bonneville Travel, Inc.,* 935 P.2d 518, 520 (Utah 1997). Included are those such as Martinez, a minor. In 1986, the legislature amended the Act to impose similar liability on commercial establishments that sell beer to the same classes of individuals if consumption on the premises is allowed. *See* Utah Code Ann. § 32A–14–1 (1986). However, from its enactment through 1997, the Act has specifically excluded from its civil liability provisions social hosts who served their guests only beer. Given the obviousness of this category of providers of beer, we find it equally obvious that social hosts were not unintentionally excluded from the Dramshop Act's reach.[3]

The exclusion from dramshop liability was as explicit and as knowingly crafted as the inclusion of the other providers of alcohol. The Act evidences an overall scheme of regulation of liability for liquor providers. Its very comprehensiveness suggests a purpose and intent to preempt inconsistent common law.

¶ 13 We find additional evidence that the legislative scheme of inclusion and exclusion of dramshop liability was intended to occupy the field of liability in the Act's damage cap provisions. When this case arose, the Act provided that the "total amount of damages that may be awarded ... under this chapter ... is limited to $100,000 and the aggregate amount which may be awarded to all persons injured ... is limited to $300,000." Utah Code Ann. § 32A–14–101(5) (1994).[4] By these provisions, the legislature assured those who were subjected to dramshop liability that they would not be subject to common law negligence liability and that this statutory liability would be limited, something that exposure to common law negligence liability would not have provided. In the face of the capping of liability for those who provide liquor or beer for on-premises consumption and who are held to a stricter than common law negligence standard of care, is it reasonable to assume that the legislature intended to expose social hosts serving beer to common law negligence claims and to unlimited monetary liability? We think not. We agree with the Illinois Supreme Court's conclusion that "[t]o expose a social host to a much greater liability than the profiting liquor vendor is incomprehensible." *Charles v. Seigfried,* 165 Ill.2d 482, 209 Ill.Dec. 226, 651 N.E.2d 154, 161 (1995). It makes much more sense to conclude that the legislature's exclusion of social hosts serving beer from the Dramshop Act was intended to exclude them,

---

**3.** Presumably, the legislature had valid reasons for precluding liability for social hosts who serve only beer to their guests. For instance, the legislature may have adopted the view that " 'liquor' has a higher alcohol content than other 'alcoholic beverages' and its consumption is more likely to intoxicate the drinker." *Stephens,* 935 P.2d at 522 n. 6. It may also have concluded that while licensed commercial sellers for on-premises consumption can be held to a comparatively high duty of care and a high level of liability, it would

be unrealistic to impose such duties on the social host. In any event, the exclusion seems clearly intended.

**4.** This section has been amended to increase the damage caps. The present damage cap is $500,-000 for any person injured, with an aggregate limit of $1,000,000. *See* Utah Code Ann. § 32A–14–101(6) (1999).

equally with all others expressly regulated by the Act, from common law negligence liability. Although the matter is not without doubt, it appears on balance that the policy reflected in the careful legislative designations of those liable and those not liable under the Act cannot coexist with the imposition by courts of different standards of care and damage exposure for some of those the legislature has decided should not be liable under the Act. We conclude that the common law of negligence is preempted insofar as it may impose liability for acts that the Dramshop Act reaches.[5] Therefore, plaintiffs' common law negligence liability claims based on Hernandez's serving alcohol to the minor Martinez, conduct covered by the Act, were properly dismissed.

¶ 14 We next address Gilger and Montoya's claims that as a result of the "special relationship" existing between Hernandez and her guests, Hernandez had a duty to act reasonably to control Martinez, to protect Gilger and Montoya from Martinez's tortious conduct, to call for help when injury occurred, and not to interfere with others who tried to summon aid. Gilger and Montoya assert that as a result of her breach of these duties, they were harmed. We first address the claim based on Hernandez's alleged failure to control Martinez or to protect Gilger and Montoya when Martinez threatened guests. We will then consider her alleged failure to summon an ambulance after Martinez stabbed Gilger and Montoya. Finally, we address her alleged interference with other guests when they attempted to summon emergency assistance.

¶ 15 To prevail in a negligence claim, Gilger and Montoya must show, among other things, that Hernandez owed them some duty of care that was breached. *See*

*Owens v. Garfield,* 784 P.2d 1187, 1189 (Utah 1989). With limited exceptions, a person has no affirmative duty to control the conduct of another, to protect another from harm, or to render aid to someone already injured through no act or fault of the person. *See Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993); *Beach v. University of Utah,* 726 P.2d 413, 415 (Utah 1986). Under this general rule, all three of the plaintiffs' claims would fail for lack of a duty. However, there is an exception to this general rule. Under certain circumstances, a "special relationship" may be found to exist between the one upon whom a duty is sought to be imposed and the party to be controlled, *see Higgins,* 855 P.2d at 236; Restatement (Second) of Torts § 315 (1964), or someone injured or threatened with injury. *See* Restatement § 314A. In such cases, the special relationship gives rise to a duty to control another or to act to protect another or render aid to another. *See Wilson v. Valley Mental Health,* 969 P.2d 416, 419 (Utah 1998); *Higgins,* 855 P.2d at 236; *Madsen v. Borthick,* 850 P.2d 442, 444 (Utah 1993); *Beach,* 726 P.2d at 415. The "essence" of a special relationship creating the duty to protect or aid another is "dependency by one party upon the other or mutual dependence between the parties." *Beach,* 726 P.2d at 416 (citing Restatement § 314A cmt. b).

¶ 16 The issue before us is whether Gilger and Montoya have alleged facts that establish a special relationship and a consequent duty without reliance on facts implicating the injury addressed by the Dramshop Act.[6] In other words, ignoring the allegation that Hernandez provided alcohol to an intoxicated minor, the question is whether a special relationship exists between a social host and a

---

5. Whether we like the ultimate overall scheme of liability for alcohol providers, commercial and private, on-premises consumption or off, that result is not the issue here. Justice Durham's dissent raises a number of questions of what liability "should" lie under various circumstances. In our view, the legislature has undertaken to determine this question because of its highly charged nature. Some of the decisions it has made may not be ones we agree with as a matter of public policy. *See Stephens,* 935 P.2d at 523 (Zimmerman, C.J., concurring). However, what the legislature "should" do is not the question. Rather, it is what the legislature has done. Now that we have addressed this whole series of cases, those who would like to see responsibility for harms caused by alcohol consumption allocated in a different fashion are put on notice that the forum in which they should seek relief is legislative, not judicial.

6. As we stated earlier, common law causes of action based on facts implicating the injuries addressed by the Dramshop Act are preempted.

guest creating a duty to act under the three fact scenarios alleged: (i) where it becomes foreseeable that one guest may seriously injure another unless controlled; (ii) where a guest may be injured by another guest unless protected; or (iii) where a guest has already suffered serious injury and needs emergency aid.

¶ 17 We conclude that no special relationship exists between a host and a guest that imposes on a social host a duty either to control one guest or to protect another when one threatens to injure the other. Requiring a social host either to control a belligerent guest or to protect her guests from the threat of injury by another guest would impose a duty "that is realistically incapable of performance" in the usual circumstances. *Wilson,* 969 P.2d at 419 (citing *Higgins,* 855 P.2d at 237). For example, it is unrealistic to expect a social host to accurately anticipate when a guest poses a risk of serious injury to another guest. *See Hunsaker v. State,* 870 P.2d 893, 897 (Utah 1993) (finding no duty where it was not possible for state to determine that parolee was "uniquely dangerous"); *Husband v. Dubose,* 26 Mass.App.Ct. 667, 531 N.E.2d 600, 602 (1988) (noting that social hosts are not ordinarily expected to anticipate that guest will be "violently attacked with deadly weapon by another guest"). And while a host, as owner or occupier of the premises where the social event is held, has legal authority to eject belligerent guests like Martinez, a right not shared by her guests, that does not mean that right is physically capable of exercise with sufficient predictability that we can say it imposes a duty to exercise it.

¶ 18 Moreover, wholly apart from the question of whether the proposed duty is feasible, there remains the key point that a special relationship ordinarily is found only when there is an element of dependency of the one claiming the duty upon the one owing the duty that is created by the nature of the relationship between the parties. But there is nothing inherent in the host-guest relationship that makes a guest particularly dependent upon the host for protection when threatened by another guest. The mere fact that the host has a legal right to tell a guest to leave does not consign any other guest to a position of dependency on the host for protection. The other guests remain entitled to protect themselves or, more prudently, to avoid a potentially dangerous confrontation by simply leaving. We therefore conclude that the host-guest relationship does not give rise to a special relationship imposing on a social host an affirmative duty either to control or to protect her guests where it is foreseeable that one may injure another.

¶ 19 We next address the claim that a special relationship may arise between a social host and a guest when the guest has fallen gravely ill or suffered serious injury at the host's abode, which gives rise to a duty in the host to provide or summon emergency aid. We have never had occasion to address this issue, although Prosser and Keeton note that there is "respectable authority" recognizing a duty to render aid to a guest in peril. *See* W. Page Keeton et. al., *Prosser and Keeton on the Law of Torts* § 56, at 376 (5th ed.1984) (citations omitted); *see also Endre v. Arnold,* 300 N.J.Super. 136, 692 A.2d 97, 101 (Ct.App.Div.1997); *Lindsey v. Miami Dev. Corp.,* 689 S.W.2d 856, 859 (Tenn.1985). We find no need to consider the precise scope of such a duty today. But we can say that where a guest is sufficiently ill or injured so as to lack the ability to summon aid for him- or herself, a host has a duty to take reasonable steps to secure such aid. The facts alleged are enough to create a jury question as to whether the injuries inflicted by Martinez were sufficient to deprive the plaintiffs of the ability to summon aid, and as to whether the plaintiffs were injured and incapacitated in or on the property and close enough in time and physical proximity to the Hernandez house to still be considered her guests so as to reasonably impose on her a duty to summon aid.

¶ 20 The final issue is whether Hernandez may be held liable in negligence for actively preventing another guest from using her phone to summon an ambulance for Gilger and Montoya after Martinez stabbed them. An act of misfeasance may constitute actionable negligence without reliance on a special relationship to impose an affirmative duty to act.

Even though the defendant may be under no obligation to render assistance himself, he is at least required to take reasonable care that he does not prevent others from giving it.... The principle has been carried even to the length of holding that there is liability for interfering with the possibility of such aid, before it is actually being given. Such acts are of course "misfeasance," but the real basis of liability would appear to be the interference with the plaintiff's opportunity of obtaining assistance.

Keeton et. al. *supra* ¶ 19, § 56, at 382. In a situation where one negligently prevents another from receiving aid by preventing a phone call from being made for an injured person, there need not be a host-guest relationship for liability.

¶ 21 In light of the above, we hold that Gilger and Montoya have stated a claim for which relief can be granted; therefore, dismissal of two of their claims under Rule 12(b)(6) was error. A fact finder may conclude that Hernandez is liable for aggravation of plaintiffs' injuries due to delayed arrival of emergency aid caused by Hernandez's failure to summon aid or by her active prevention of another securing aid.

¶ 22 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

¶ 23 Chief Justice HOWE and Justice RUSSON concur in Justice ZIMMERMAN's opinion.

¶ 24 Justice STEWART concurs in the result.

DURHAM, Associate Chief Justice, dissenting:

¶ 25 I respectfully dissent. Although I agree that the Dramshop Act, Utah Code Ann. §§ 32A–14–101 to –102 (1999), does not apply to social hosts serving beer to minors as long as such beer is not provided at a location allowing consumption on the premises, I do not agree with the majority's preemption analysis for much the same reasons set out in my dissent in *Red Flame, Inc. v.*

*Martinez,* 2000 UT 22, 996 P.2d 540 (Durham, J., dissenting).

¶ 26 In four simultaneously decided cases, including the instant case, this court has been presented with an opportunity to construct a coherent body of jurisprudence concerning the Dramshop Act. *See Red Flame,* 2000 UT 22, 996 P.2d 540; *Mackay v. 7– Eleven Sales Corp.,* 2000 UT 15, 995 P.2d 1233; *Adkins v. Uncle Bart's Inc.,* 2000 UT 14. Numerous issues have been raised and decided in these cases, but I address here only the following four core questions regarding the Dramshop Act:

1. Is there, or should there be, a third-party common law cause of action against commercial vendors who provide alcohol? *See Adkins,* ¶¶ 13–18; *Mackay,* ¶¶ 7–13.

2. Is there, or should there be, a third-party common law cause of action against social hosts who provide alcohol? *See* Maj. Op., ¶ 8.

3. Provided there is a third-party common law cause of action against either commercial vendors or social hosts, does the Dramshop Act preempt such causes of action? *See* Maj. Op., ¶¶ 5– 13.

4. Do the comparative fault principles of the Liability Reform Act, Utah Code Ann. §§ 78–27–37 to –43 (1996 & Supp. 1999), apply to causes of action brought under the Dramshop Act? *See Red Flame,* ¶ 9.

Because of the simultaneous issuance of the opinions in these four cases, and their partial overlap, I offer a summary of the court's responses to these questions and my position thereon.

## I. THIRD–PARTY COMMON LAW CAUSE OF ACTION AGAINST COMMERCIAL VENDORS

¶ 27 The question of whether a third-party common law cause of action against commercial vendors of alcohol exists was addressed in *Adkins. See Adkins,* ¶¶ 13–18. There, the majority concluded that such cause of action did not exist. *See id.* at ¶ 18. However, as delineated in my dissenting opinion, I do not agree because I believe two cases

decided before the legislature enacted the Dramshop Act indicate that a third-party common law cause of action against commercial vendors may exist. *See id.* at ¶¶ 49–54 (Durham, J., dissenting). Specifically, in *Rees v. Albertson's, Inc.,* this court reversed a trial court's grant of summary judgment denying an intoxicated minor's contribution claim against the defendant Albertson's who was alleged to have illegally sold alcohol to the minor. *See Rees,* 587 P.2d 130, 133 (Utah 1978). Moreover, in *Yost v. State,* this court affirmed an allocation of liability running from the liquor provider to a third party injured by an intoxicated minor, subject to a reduction for the plaintiff's own liability. *See Yost,* 640 P.2d 1044, 1048 (Utah 1981). Although neither ruling explicitly recognized a third-party common law cause of action against commercial vendors, neither ruling could stand unless the illegal provision of alcohol by commercial vendors could give rise to a claim of liability by third parties. Stated differently, a defendant cannot be required to contribute, as suggested in *Rees,* or assigned liability, as recognized in *Yost,* unless the defendant is liable in the first place to the injured third party. Therefore, these cases strongly imply that a third-party common law cause of action against commercial vendors of alcohol exists, and this court recognized this fact in *Mackay* where it allowed a third-party cause of action against 7–Eleven to proceed. *See Mackay,* ¶¶ 9, 12–13.

## II. THIRD–PARTY COMMON LAW CAUSE OF ACTION AGAINST SOCIAL HOSTS

¶ 28 Before the instant case, this court has never had the opportunity to decide whether there is or should be a third-party common law cause of action against social hosts who provide alcohol to persons who injure a third party. Unfortunately, even though presented with such an opportunity in the instant case, the majority declines to undertake the analysis and decides that, even if such a

cause of action exists, it is preempted by the Dramshop Act. *See* Maj. Op., ¶ 8. As I indicated in my dissent in *Adkins,* I do not believe there is any indication in the Dramshop Act that it was intended to be a comprehensive ordering of all the liability questions arising from the provision of alcohol and resulting injuries. *See Adkins,* ¶ 56 (Durham, J., dissenting). I believe it was a discrete, free-standing attempt to achieve some very specific goals, *see Red Flame,* ¶ 16 (Durham, J., dissenting), and not an effort to preempt the judicial development of the common law in this arena. Therefore, I believe the majority's preemption conclusion is wrong, and that this court should engage in an independent analysis of whether such a common law cause of action "ought, as a matter of policy and law development, to co-exist in the era ushered in by our Dramshop Act." *Adkins,* ¶ 56 (Durham, J., dissenting).[1] Such an analysis would of course have to include close consideration of the important policy differences between imposing dramshop liability on commercial vendors and imposing such liability on social hosts, and I take no position today on what the results of such an analysis would be.

## III. PREEMPTION BY DRAMSHOP ACT

¶ 29 As mentioned previously, the majority concludes in the instant case that the Dramshop Act preempts a third-party common law cause of action against social hosts. *See* Maj. Op., ¶¶ 12–13. In reaching its conclusion, the majority notes that social hosts who provide beer are not regulated by the Dramshop Act, as long as they do not serve the beer at a location allowing consumption on the premises, and states that the Dramshop Act "evidences an overall scheme of regulation of liability for liquor providers." *See* Maj. Op., ¶ 12. In combination, these statements suggest that, unless the Dramshop Act provides a statutory cause of action to an injured third party, such party is without recourse because the comprehensive nature of the Dramshop

---

1. The majority opinion seems to say (in footnote 5) that my view presumes to tell the legislature what it "should" do about liability in this arena. I hope it is clear from this opinion that I address only this court's common law responsibility. Because I reject the majority's view of preemption,

I have mentioned policy considerations that I believe belong still within the judicial common law development sphere. I, of course, agree that "what the legislature 'should' do is not the question." Maj. Op., fn. 5.

Act preempts all third-party common law causes of action against alcohol providers. I cannot agree. As I stated in *Red Flame*, the Dramshop Act focuses on the limited goals of punishment and regulation, and secondarily, compensation. *See Red Flame*, ¶¶ 16–17 (Durham, J., dissenting). To achieve these specific goals, the Dramshop Act provides limited statutory remedies to third parties injured by intoxicated persons who purchased or received alcohol from the defendant. . In light of these *limited* goals and *narrow* statutory remedies, it seems unlikely that the legislature intended the Dramshop Act to provide the sole remedy against alcohol providers for third parties injured by intoxicated persons receiving alcohol from the provider.

¶ 30 This conclusion is bolstered by the fact that if the majority's conclusion that there can be no cause of action against an alcohol provider unless provided for by the Dramshop Act is applied to the present version of the Dramshop Act, injured third parties would have no recourse against general food stores selling beer at retail for off-premise consumption, who are specifically excluded from the Dramshop Act's coverage. *See* Utah Code Ann. § 32A–14–101(10) (1999); *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 522–23 (Utah 1997) (Zimmerman, C.J., concurring) (criticizing exclusion from Dramshop Act of profiting sellers of beer not consumed on premises). Exempting such major providers of alcohol from *any* type of liability is entirely inconsistent with the public policy of this state to ensure that alcohol providers responsibly provide alcohol to their customers. It reflects a serious gap in the so-called "comprehensive nature" of the Dramshop Act, one which the courts could and should address as a matter of common law. Morever, this result directly contradicts this court's holding in *Mackay* permitting a third-party common law cause of action to proceed against 7–Eleven, a store selling beer for off-premise consumption. *See Mackay*, ¶¶ 12–13.

## IV. APPLICATION OF LIABILITY REFORM ACT TO DRAMSHOP ACT

¶ 31 In *Red Flame*, the majority ultimately concluded that the comparative fault princi-ples of the Liability Reform Act apply to Dramshop Act cases. *See Red Flame*, ¶ 9. Again, I did not join the majority. Briefly summarized, I concluded in *Red Flame* that, because the Dramshop Act does not seek to accomplish the same purposes that the Liability Reform Act does, "no cause of action for contribution or indemnity should lie on behalf of a dramshop against an intoxicated person who causes injuries for which the dramshop is liable under the Dramshop Act." *Id.* at ¶ 15 (Durham, J., dissenting). As further evidence that the Liability Reform Act's comparative fault principles do not apply to the Dramshop Act, I noted that such application would severely undermine the penal and regulatory goals of the Dramshop Act, a result the legislature could not have intended when it enacted the Liability Reform Act. *See id.* at ¶ 18 (Durham, J., dissenting).

## V. CONCLUSION

¶ 32 With respect to the instant case, I do not agree that the Dramshop Act preempts third-party common law causes of action against social hosts who provide alcohol to persons who injure the third party, and I would undertake the necessary common law analysis. Moreover, for the sake of clarity, I have reiterated my conclusions in *Adkins* that a third-party common law cause of action exists against *commercial* vendors of alcohol, and in *Red Flame* that the comparative fault principles of the Liability Reform Act should not apply to Dramshop Act cases.