2000 UT 22

**RED FLAME, INC., Plaintiff and Appellant,**

v.

**Samuel D. MARTINEZ, Defendant and Appellee.**

**Susan Durrant, Plaintiff,**

v.

**Red Flame, Inc., Defendant.**

**No. 980094.**

Supreme Court of Utah.

Jan. 28, 2000.

---

tinez. Red Flame sought to offset its liability by allocating Martinez's comparative fault for an automobile accident allegedly caused by Red Flame's service of alcoholic beverages to Martinez. Red Flame filed its complaint after Martinez's girlfriend, Susan Durrant, brought a dramshop action against Red Flame for injuries she suffered in the accident. We reverse.

## BACKGROUND

¶ 2 This case arises out of an automobile accident in which Martinez drove his vehicle while in an intoxicated condition after consuming alcohol allegedly provided by Red Flame. Durrant, a passenger in his car, was injured. Durrant settled with Martinez's insurer and released all claims against Martinez (whom she married sometime after the accident). She also filed an action against Red Flame pursuant to Utah Code Ann. § 32A–14–101, the Dramshop Liability Act. Red Flame initially sought leave to file a third-party complaint against Martinez under Utah Rule of Civil Procedure 14(a), for the purpose of offsetting its own liability by apportioning Martinez's comparative fault. The court, relying on *Reeves v. Gentile*, 813 P.2d 111, 116 (Utah 1991), held that principles of comparative fault were inapplicable as between an intoxicated driver and a provider of alcohol in an action brought under the Dramshop Liability Act. Red Flame then filed a separate action against Martinez, and the two cases were consolidated and assigned to a different judge. Martinez moved to dismiss the complaint, and the trial court granted the motion based on the "law of the case" doctrine. We review that order on interlocutory appeal.

## DISCUSSION

¶ 3 The trial court dismissed Red Flame's direct action against Martinez because it determined that the legal basis for bringing that action had already been rejected at the time Red Flame brought its motion to file a third-party complaint against Martinez. Based on its interpretation of the law of the case doctrine, the trial judge held it was foreclosed from reconsidering the legal correctness of another judge's ruling on the

Bryan L. McDougal, Sandy, for Durrant and Martinez.

Scott W. Christensen, Jason M. Kerr, Salt Lake City, for Red Flame.

RUSSON, Justice.

¶ 1 We granted permission for Red Flame to appeal an interlocutory order dismissing its complaint against defendant Samuel Mar-

same legal issue. We first examine the correctness of that ruling.

▬ ¶ 4 As a general principle, the law of the case doctrine in this context [1] prevents "one district court judge [from] overrul[ing] another district court judge of equal authority." *Mascaro v. Davis,* 741 P.2d 938, 946 (Utah 1987). It is not that the second judge lacks power to revisit an earlier judge's rulings. Rather, there are circumstances where that power should not be exercised. *See* Allan D. Vestal, *Law of the Case: Single–Suit Preclusion,* 1967 Utah L.Rev. 1, 16–18. In *Sittner v. Big Horn Tar Sands & Oil, Inc.,* 692 P.2d 735 (Utah 1984), we addressed the general rule and one relevant exception. We stated:

> One branch of what is generally termed the doctrine of "law of the case" has evolved to avoid the delays and difficulties that arise when one judge is presented with an issue identical to one which has already been passed upon by a coordinate judge in the same case. "[O]rdinarily one judge of the same court cannot properly overrule the decision of another judge of that court." There are several exceptions to this rule.... [In this case,] the second judge may reverse the first judge's ruling if the issues decided by the first judge are presented to the second judge in a "different light," as where a summary judgment initially denied is subsequently granted after additional evidence is adduced.

*Id.* at 736 (citations omitted); *see also AMS Salt Indus. v. Magnesium Corp. of Am.,* 942 P.2d 315, 319 (Utah 1997). Then, in *State v. Lamper,* 779 P.2d 1125 (Utah 1989), we noted that an intervening change in circumstances justifying the second judge's departure from the first judge's ruling was not limited to a change in the known relevant facts, but could also include a change in the relevant law. *See id.* at 1129 (citing *Paulson v. Lee,* 229 Mont. 164, 745 P.2d 359, 360 (1987); *State v. Scott,* 68 Or.App. 386, 681 P.2d 1188, 1190–91 (1984)).

▬ ¶ 5 Another potential exception to the rule that one judge cannot overrule a prior judge of equal status in the same case may arise where, although the factual and legal posture of the case has not changed, it appears to the second judge that the first ruling was clearly erroneous and will infect the subsequent proceedings with error. *See* Vestal, 1967 Utah L.Rev. at 16.

¶ 6 The situation before us is not eligible for either exception. Here, the first judge, Judge Dawson, relied on clear language in *Reeves* to the effect that comparative fault does not apply where dramshop liability is at issue. When the second judge, Judge Bean, was asked to address the issue, the issue was not presented in a different factual or legal light.[2] Therefore, nothing had changed and the "different light" exception did not apply. Moreover, any plainly erroneous exception would also be unavailable. There was no reason for Judge Bean to believe that this court would retreat from the plain language of *Reeves,* even if the case before him was not factually on all fours.

¶ 7 We therefore affirm Judge Bean's ruling based on the law of the case doctrine. Nonetheless, because we treat this issue on interlocutory appeal and are remanding for further proceedings, we rely on rule 30(a) of the Utah Rules of Appellate Procedure to address the merits of the comparative fault question.

1. For a broader discussion of the doctrine, see Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated Cases and in Multidistrict Litigation,* 135 U. Pa. L.Rev. 595 (1987); Allan D. Vestal, *Law of the Case: Single–Suit Preclusion,* 1967 Utah L.Rev. 1.

2. We reject Red Flame's argument that its direct action against Martinez presented its case "in a different light" because a different standard of review applies to motions to join third parties under Utah Rule of Civil Procedure 14(a) and motions to dismiss a complaint under Utah Rule of Civil Procedure 12(b) (the former are subject to an abuse of discretion standard of review, and the latter are reviewed for legal correctness). Even if we were to take as correct Red Flame's dubious contention that a differing standard of review on appeal creates a "different light" for the issue before the trial court, its argument is without merit under the particular procedural posture of this case. The court did not state any discretionary basis for its ruling denying the motion to join Martinez under rule 14(a). It relied solely on *Reeves.* As such, that ruling could only have been reviewed for its correctness.

¶ 8 Rule 30(a) provides in relevant part:

> The court may ... order a new trial or further proceedings to be conducted.... [T]he court may pass upon and determine all questions of law involved in the case presented upon the appeal and necessary to the final determination of the case.

Utah R.App. P. 30(a). The present case is unusual, but does fit within the spirit of the rule. If we remand this case for trial without speaking on the comparative fault issue when we are now of the view that *Reeves* should be overruled, the result will be a trial and an appeal that will produce only a reversal and a new trial. This vast waste of time and money for all concerned is avoided by our announcing the overruling of *Reeves*. Then, when defendant Red Flame presents the issue again, as it certainly will, the trial court will be free to reconsider the issue because the law will have changed, thus bringing this case squarely within the "different light" exception to the law of the case doctrine. *See Sittner*, 692 P.2d at 736.

¶ 9 With respect to the merits of the dramshop issue, we conclude that the Dramshop Liability Act is subject to the dictates of the comparative fault statute. The comparative fault statute in effect at the time this cause of action was brought provided:

> "Fault" means any actionable breach of legal duty, act, or omission, proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification, or abuse of a product.

Utah Code Ann. § 78–27–37(2) (1996).[3]

¶ 10 According to its plain language, the Dramshop Liability Act provides precisely what the comparative fault statute defines: a cause of action for "*injury* in person, property, or means of support," Utah Code Ann. § 32A–14–101(1)(a)(i) (emphasis added), based on the dramshop's *act* of "directly giv[ing], sell[ing], or otherwise provid[ing] an alcoholic beverage" to any of several enumerated classes of persons, *id.* § 32A–14–101(1)(b), in violation of its *legal duty* to withhold alcohol from those persons.[4] The mere fact that the Dramshop Liability Act prescribes a form of strict liability rather than traditional negligence does not exclude it from application of the comparative fault statute. *See S.H. v. Bistryski*, 923 P.2d 1376, 1380 (Utah 1996). Hence, the Dramshop Liability Act is subject to the provisions of the comparative fault statute. *See Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989) ("[W]here statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent.").

¶ 11 We thus overrule *Reeves*. *Reeves* conclusorily held that principles of comparative fault were not applicable as between different dramshops contributing to the same injury, but were applicable as between dramshops and plaintiffs. *See Reeves*, 813 P.2d at 116–18. *Reeves* did not address the question of apportioning fault between dramshops and intoxicated persons causing injuries, nor did it provide any reasoning suggesting which of its two competing rationales would govern that question. Moreover, to the extent *Reeves* based its holding upon the premise that strict liability cannot be included in comparative fault calculations, that holding is rebutted by the plain language of the comparative fault statute and our subsequent decision in *Bistryski*.

¶ 12 We affirm the trial court's decision based on the law of the case doctrine. How-

---

**3.** The 1999 amendment to this provision substituted the term "comparative negligence" for "contributory negligence." *See* Utah Code Ann. § 78–27–37(2) (Supp.1999).

**4.** The only statutory provision that could conceivably exclude the Dramshop Liability Act from the operation of the comparative fault statute is subsection 32A–14–101(8), which provides that "[n]othing in this chapter precludes any cause of action or additional recovery against the person causing the injury." This subsection, however, simply clarifies that the intoxicated person is not immunized from liability because the legislature has granted a cause of action against the establishment that provided the alcohol to that person. It also serves to reaffirm that the intoxicated person does not benefit from the liability caps provided by the Dramshop Liability Act.

ever, on remand, in the event Red Flame brings an otherwise proper motion or action to allocate Martinez's fault, the trial court may consider the effect of our announcement of a change in the governing law. Under that governing law, Red Flame is entitled to apportion Martinez's proportionate share of fault to offset its own liability under the Dramshop Liability Act.

¶ 13 Justice ZIMMERMAN concurs in Justice RUSSON's opinion.

HOWE, Chief Justice, concurring:

¶ 14 I reluctantly concur that the Dramshop Act is subject to the dictates of the comparative fault statute. I do so only because of the provisions of sections 78–27–37(2) and 78–27–38(3), which provide that a defendant who is strictly liable (like a dramshop defendant) is liable only for its proportion of the total fault. It appears to me that the intent of the Dramshop Act as originally enacted was to make dramshops liable without regard to the fault of the intoxicated person, whose fault would seem to be greater and more proximate than the dramshop's fault. I believe that Justice Durham is correct that the Dramshop Act was intended to be both punitive and regulatory as well as compensatory to injured third parties. However, with the enactment of the Liability Reform Act of 1986, the impact of the Dramshop Act was diluted by the abolishment of joint and several liability. I am not sure the legislature intended that dilution, but I am constrained by the language of sections 78–27–37(2) and 78–27–38(3) to apply those sections in this dramshop case.

DURHAM, Associate Chief Justice, dissenting:

¶ 15 I respectfully disagree with Justice Russon's conclusion that the Dramshop Act, Utah Code Ann. §§ 32A–14–101 to –102 (1999), is subject to the comparative fault principles of the Liability Reform Act, Utah Code Ann. §§ 78–27–37 to –43 (1996 & Supp. 1999). Based upon its sui generis nature and its complex purposes, I believe that the Utah Dramshop Act was intended to operate entirely outside the system of comparative fault established by the Liability Reform Act.

Therefore, no cause of action for contribution or indemnity should lie on behalf of a dramshop against an intoxicated person who causes injuries for which the dramshop is liable under the Dramshop Act.

¶ 16 The history of so-called dramshop acts, also known as civil damages acts, demonstrates that they have three basic purposes: (1) penal (intended to punish commercial servers of alcohol for the wrongful provision thereof), *see, e.g., Wessel v. Carmi Elks Home, Inc.*, 54 Ill.2d 127, 295 N.E.2d 718, 720 (1973) ("As repeatedly stated by this court, the statute, as applied to a dramshop owner or operator, is penal in character."); (2) compensatory (intended to provide compensation for injured third-party victims, often not available from financially irresponsible intoxicated drivers), *see, e.g., Ascheman v. Village of Hancock*, 254 N.W.2d 382, 385 (Minn.1977) ("The Civil Damages Act has been characterized as … remedial in nature, its intent being to … provide a remedy."); and (3) regulatory (intended to impose some of the costs of alcohol-related injuries on the industry and to ensure adequate financial responsibility/insurance from industry participants), *see Wessel*, 295 N.E.2d at 720–21 (stating that state's dramshop act provides basis of discipline that "may be of an indirect nature which arises from the owner's or operator's fear of cancellation of insurance or prohibitive premiums. These factors demonstrate that a substantial burden has been placed upon those engaged in the liquor industry."). These purposes reflect significant public policy choices about financial liability for a widespread source of private and public harm—the damage done by intoxicated persons to third parties.

¶ 17 By contrast, the policies enshrined in Utah's Liability Reform Act—compensation of injured parties and limitation of defendants' liability to the share of the injuries directly caused by their acts—do not connect meaningfully with the concerns addressed in the Dramshop Act provisions. Although it is clear that compensation for victims is one purpose of the Dramshop Act, regulatory and penal purposes appear to have been paramount in its design, as demonstrated by subsections 32A–14–101(6) and (8) of the Dram-

shop Act. Specifically, subsection (6) contains a cap on damages, both for individual plaintiffs and in the aggregate, for all plaintiffs injured in a single incident. The presence of the caps undermines the notion that the statute is intended solely to compensate injured persons. Although it may partially serve that function, the liability limitations in the statute suggest that it may also properly be viewed as punitive (with limits on the amount of the "fine") and regulatory (assuring that dramshops can predict their exposure and obtain adequate insurance). Furthermore, subsection (8) specifies that "[n]othing in this chapter precludes any cause of action or additional recovery against the person causing the injury," Utah Code Ann. § 32A–14–101(8), suggesting that the Dramshop Act is in no way exclusive or preclusive in its compensation goals.

¶ 18 Considered in the context of its penal and regulatory nature, the Dramshop Act can function as it was intended only if it occupies a sphere entirely independent of that governed by the Liability Reform Act. Whereas the principles of the Liability Reform Act permit any defendant to escape or reduce liability where some other tortfeasor has caused injuries in whole or in part, the Dramshop Act clearly contemplates that a purveyor of alcohol must pay limited damages whenever there is intoxication causing injury. The Dramshop Act, by definition, contemplates injurious acts by an intoxicated person, who will of course always be liable for negligence. Since these acts in turn will always be more "proximate" to the injuries than the provision of the alcohol, imposing liability on providers as the majority requires will frequently be futile because they can mitigate their responsibility by comparing it to that of the tortfeasor. Stated differently, the penal and regulatory purposes of the Dramshop Act will be frustrated by permitting application of the comparative fault principles of the Liability Reform Act. I do not believe the legislature intended such a result when it enacted the Liability Reform Act.

¶ 19 This conclusion can be reconciled with our prior cases on the basis of their rationales. *Rees v. Albertson's, Inc.,* 587 P.2d 130 (Utah 1978), which permitted a claim for contribution based on common law negligence by an intoxicated person against an alcohol provider, was decided before the passage of the Dramshop Act. It acknowledged the propriety of common law contribution from a dramshop. However, as discussed previously, the Dramshop Act, unlike the common law, cannot logically be viewed to permit the alcohol provider to receive contribution from the intoxicated person; thus *Rees* has no application.

¶ 20 Likewise, this court's past holdings with respect to the application of comparative fault principles under the Liability Reform Act to other forms of liability do not undermine the conclusion that such principles do not apply to the Dramshop Act. *Mulherin v. Ingersoll–Rand Co.,* 628 P.2d 1301 (Utah 1981), and *S.H. v. Bistryski,* 923 P.2d 1376 (Utah 1996), stand for the proposition that strict liability, both product and non-product, is "fault" for purposes of comparison under the Liability Reform Act. It is significant, however, that the type of strict liability at issue in those cases was truly non-fault based. The statutory liability imposed on dog owners considered in *Bistryski* for example, does not require any negligent or wrongful act by an owner, just as strict product liability considered in *Mulherin* requires no wrongdoing or negligence by a manufacturer. In contrast, the Dramshop Act predicates liability on unlawful (although not necessarily negligent) acts because of its regulatory and penal purposes. The rationale for extending comparative negligence principles to product liability and "pure" strict liability cases strikes a logical balance between the goals of victim compensation and protecting "innocent" or non-wrong-doing defendants from an unfair share of responsibility. "Ultimately, the question of which damages distribution scheme to adopt amounts to a choice between fully compensating the plaintiff and proportionally assessing damages to the defendant." *See* Lee A. Wright, Comment, *Utah's Comparative Apportionment: What Happened to the Comparison?,* 1998 Utah L.Rev. 543, 581. Those choices are accommodated in the Liability Reform Act. However, the Dramshop Act is not concerned with the same balancing process. It seeks rather to use liability as an enforcement

mechanism for responsible alcohol distribution, while at the same time providing (limited) sources of compensation for injuries associated with the industry. The extension of comparative fault principles to the Dramshop Act is not required by our prior case law and, I assert, was never intended by the legislature.

Justice STEWART concurs in Justice DURHAM's dissenting opinion.

Justice STEWART acted prior to his retirement.