2004 UT 96

**John MILLER and Joan Miller, Plaintiffs and Appellees,**

v.

**UNITED STATES of America, Defendant and Appellant.**

No. 20030054.

Supreme Court of Utah.

Nov. 19, 2004.

Rehearing Denied Jan. 20, 2005.

G. Scott Ray, Edward P. Moriarity, Jeffrey D. Gooch, Justin T. Ashworth, Salt Lake City, and Shandor S. Badaruddin, Missoula, Montana, for plaintiffs.

Paul M. Warner, United States Att'y, Jeffrey E. Nelson, Asst. United States Att'y, for defendant.

NEHRING, Justice:

¶ 1 This case comes to us from United States District Court. We are asked to de-

termine: "Whether a federal government employee, who ordinarily would be immune from suit in cases of strict liability, may be liable under Utah's Dramshop Act if the Plaintiffs establish negligence."

¶ 2 We first comment on the scope of the question certified to us. As framed, the question invites us to stray beyond the scope of our authority. A federal government employee acquires immunity from suit through the operation of the Federal Tort Claims Act (FTCA) and the cases interpreting its provision. 28 U.S.C. § 1346(b) (1997); *Laird v. Nelms*, 406 U.S. 797, 803, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *Dalehite v. United States*, 346 U.S. 15, 44–45, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The task of applying the FTCA to a claim is a federal question outside the bounds of our statutory jurisdiction "to answer all questions of state law certified by a court of the United States." Utah Code Ann. § 78–2–2(1) (2002). Whether a federal government employee who enjoys FTCA protection "may be liable" based on our assessment of the nature of characteristics of Utah dramshop liability is an inquiry that impliedly invites us to apply the FTCA to state law. Were we to accept this invitation we would overstep our authority. We therefore expressly limit our holding to the nature and essence of state dramshop liability. Our references to the FTCA are intended to provide context for our discussion and analysis of the state law component of the certified question.

¶ 3 We hold that Utah's Dramshop Act is a strict liability statute. We further hold that Utah does not recognize a common law cause of action in negligence for the sale of alcohol to persons who cause injury to third parties while under the influence of alcohol.

## BACKGROUND

¶ 4 John and Joan Miller were injured by Arthur Valle, an employee of the United States Air Force, who had been drinking liquor at the Noncommissioned Officers Club at Hill Air Force Base, located in Utah. An intoxicated Mr. Valle left the club in his car, driving at high speeds, and crashed into the Millers' car, seriously injuring them. The Millers filed suit alleging that Mr. Valle had been "negligently and carelessly" served alcohol at the club in violation of the Utah Dramshop Act and that the federal government, as the dramshop, was liable for the resulting injuries to the Millers. The federal court concluded that the Millers' claims did not appear to be "clearly answered under Utah statutory law and controlling precedent" and certified its question to us.

## JURISDICTION

¶ 5 This court has original jurisdiction to answer questions of state law certified by a court of the United States. Utah Code Ann. § 78–2–2(1) (2002);[1] *see also* Utah R.App. P. 41(a).[2]

## ANALYSIS

■ ¶ 6 The Millers concede that the Utah Dramshop Act is a strict liability statute. This concession reflects a candid recognition that our cases have clearly enunciated our view that the Act "prescribes a form of strict liability rather than traditional negligence." *Red Flame, Inc. v. Martinez*, 2000 UT 22, ¶ 10, 996 P.2d 540. We have repeatedly stated that the purpose of the Act "was to compensate innocent third parties by making dramshop owners strictly liable without regard to the finding of fault, wrongful intent, or negligent conduct on their part." *Adkins v. Uncle Bart's Inc.*, 2000 UT 14, ¶ 16, 1 P.3d 528 (citing *Reeves v. Gentile*, 813 P.2d 111, 116 (Utah 1991)). The Millers' concession would appear to fully answer the state law

---

1. Utah Code section 78–2–2(1) reads: "The Supreme Court has original jurisdiction to answer all questions of state law certified by a court of the United States." Utah Code Ann. § 78–2–2(1) (2002).

2. Rule 41 states, in relevant part:
   (a) The Utah Supreme Court may answer a question of Utah law certified to it by a court of the United States when requested to do so by such certifying court acting in accordance with the provisions of this rule if the state of the law of Utah applicable to a proceeding before the certifying court is uncertain.
   Utah R.App. P. 41(a).

component of the certified question: Utah's Dramshop Act is a strict liability statute.[3]

¶ 7 The Millers have, however, recast the certified question in a manner that asks us to answer two subsidiary questions: (1) whether Utah recognizes a common law negligence claim for the commercial sale of liquor to an intoxicated person, and if so (2) whether the Act preempts this claim of common law negligence. Were we to answer these questions, as the Millers urge, and recognize that common law negligence liability could extend to the United States under the factual scenario of this case, free of preemption by the Act, the Millers contend that the FTCA's strict liability impediment would be swept away.

¶ 8 Justice Durrant would have us decline the invitation to take up these subsidiary questions. He correctly admonishes us that sound policy reasons underlie our practice of addressing only those issues properly presented to us. He also does well to remind us of the perils of relaxing our parsimonious approach to decision making. We believe, however, that the subsidiary questions are fairly included constituents of the certified question. Our answer to the certified question exposed the subsidiary questions of whether our common law recognizes a cause of action in negligence for the federal government's conduct independent from, and not preempted by, the Act. The parties acknowledged that the subsidiary questions were inextricably tied to the certified question by devoting the majority of their briefs to them. We should be mindful that the federal court certified its question to us because it sought our direction on an uncertain issue of state law in a lawsuit pending before it. We would not be promoting efficiency, or otherwise serving the objectives of the question certification process, by returning an answer to the federal court which all concerned know has spawned additional state law questions and upon which we elect to remain silent.

¶ 9 We should not be tied to an unduly narrow and literal reading of a certified question posed by a federal court. Our decision to sidestep a literal reading of the certified question to avoid overstepping our jurisdiction aptly illustrates the flaw in such an approach. Having reinterpreted the certified question to escape the prospect of improperly answering a question of federal law, we would hardly be faulted for interpreting the certified question in a manner that actually confronts and answers the questions embedded in it.

¶ 10 The question certification procedure represents a unique exercise of our original jurisdiction. Unlike our traditional appellate review, we are not presented with a decision to affirm or reverse. Instead, we are being approached for guidance. We should respond to these requests guided by a desire to provide meaningful and comprehensive assistance which, under certain circumstances, may require a more expansive answer than a literal reading of the certified question may warrant. We therefore take up the subsidiary questions posed by the parties.

## I. COMMON LAW DRAMSHOP LIABILITY

■ ¶ 11 This court has consistently voiced our allegiance to the general rule that our common law does not recognize a right of action against a seller of alcoholic beverages by a third party injured by the buyer of the beverage. *Mackay v. 7–Eleven Sales Corp.*, 2000 UT 15, ¶ 7, 995 P.2d 1233; *Adkins*, 2000 UT 14 at ¶¶ 13, 15, 1 P.3d 528. Explained in the traditional tort law nomenclature, the general rule instructs that when a third party is injured by an intoxicated person, it is the consumption of the alcohol, and not the furnishing of it, which proximately causes the injury. *Adkins*, 2000 UT 14 at ¶ 13, 1 P.3d 528 (citing *Yost v. State*, 640 P.2d 1044, 1046 n. 2 (Utah 1981)).

---

3.  Although we do not opine on the proper application of the FTCA to the facts and law relevant to the lawsuit which spawned the certified question, we note that the United States Supreme Court has interpreted the FTCA to retain the sovereign immunity of the United States against strict liability claims. *Dalehite v. United States*, 346 U.S. 15, 44–45, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

¶ 12 We have honored the general rule even while endorsing exceptions to it. *Mackay*, 2000 UT 15 at ¶ 7, 995 P.2d 1233. For example, we have permitted the allocation of a liquor provider's liability to an injured third party, contribution from a commercial provider to an intoxicated minor tortfeasor, and a claim against a commercial provider of alcohol to a minor in quantities greater than could be consumed by the minor himself when the minor's intoxicated friend injured a third party. *Rees v. Albertson's*, 587 P.2d 130, 133 (Utah 1978); *Yost*, 640 P.2d at 1046; *Mackay*, 2000 UT 15 at ¶ 10, 995 P.2d 1233. As Chief Justice Durham has ably pointed out, only the application of highly leveraged logic allows us to both reject common law dramshop liability generally and defend our choices of exceptions to the general rule. *Gilger v. Hernandez*, 2000 UT 23, ¶ 27, 997 P.2d 305 (Durham, Assoc.C.J., dissenting). While conceding that logical imperfections may blemish the body of our dramshop jurisprudence, we nevertheless stand by the view that, subject to the exceptions created in our case law, Utah categorically rejects a common law right by injured third parties to maintain an action against a dramshop.

¶ 13 The Millers build their case for the existence of common law dramshop liability around language in *Gilger*, which suggests that, our expressions of loyalty to the general rule notwithstanding, the claim may be viable. *Id.* ¶ 13. Specifically, the Millers point to our statement that "[t]he legislature assured those who were subjected to dramshop liability that they would not be subject to common law negligence liability and that this statutory liability would be limited, something that exposure to common law negligence liability would not have provided." *Id.* We noted that it therefore followed "that the common law of negligence is preempted insofar as it may impose liability for acts that the Dramshop Act reaches." *Id.* We disagree with the Millers' contention that an endorsement of common law dramshop liability can be extracted from these comments. The legislature may decide to include, among the reasons for enacting a strict liability dramshop statute, the desire to assure dramshop owners that they would be insulated from common law liability without acknowledging that our common law recognizes dramshop liability.

¶ 14 We took up this point in *Adkins*. 2000 UT 14 at ¶ 17, 1 P.3d 528 (citing Utah Senate Journal, 1997 Sess., at 255, 293; Utah House Journal, 1997 Sess., at 539). There, the plaintiffs pointed to the legislative debate over the 1997 amendments to the Act to support their contention that a common law cause of action existed against dramshops for wrongful death. *Id.* The plaintiffs relied upon "intent language" stating that "[this] bill does not modify any common law right that exists for injuries or wrongful death resulting from giving, selling, or otherwise providing alcoholic beverages." *Id.* Like our comments in *Gilger*, this "intent language" contains the inference that a common law dramshop cause of action exists. If it did not, there would be nothing exposed to statutory modification. We turned back this interpretation, stating that "[t]he legislature was simply stating that the Act was in addition to any common law right that might exist, but it did not state that a common law right existed." *Id.* We apply the same interpretation to our references to the common law in *Gilger*. No third party common law cause of action against dramshops exists in Utah.

¶ 15 We reach this holding mindful of the Millers' contention that despite our conclusion that the legislature did not intend to countenance common law dramshop claims through its references to the common law in the Act, we should nevertheless interpret legislative prohibitions against furnishing alcoholic beverages to intoxicated persons in Utah's Alcoholic Beverage Control Act (ABCA) to set out a duty and standard of care framework suggestive of common law negligence. Utah Code Ann. § 32A–1–104 (Supp.2003).

¶ 16 The section of the ABCA, which the Millers insist forms the necessary predicate to a claim in negligence, states in pertinent part:

A person may not sell, offer to sell, or otherwise furnish or supply any alcoholic beverage or product to:

(a) any person who is actually or apparently intoxicated; or

(b) a person whom the person furnishing the alcoholic beverage knew or should have known from the circumstances was actually or apparently intoxicated.

Utah Code Ann. § 32A–12–204(1)(a)-(b) (2003).

¶ 17 In *Adkins,* we turned away a similar attempt to erect a common law dramshop claim on the platform of statutory provisions regulating alcoholic beverages under the Liquor Control Act, the predecessor to the ABCA. 2000 UT 14 at ¶ 19, 1 P.3d 528 (citing Utah Code Ann. § 32A–5–107(24)(h) (2000)). The *Adkins* plaintiffs claimed that the entitled Liquor Control Act created a common law duty and standard of care by making it unlawful for liquor license holders or their agents to furnish alcoholic beverages to any person "actually, apparently, or obviously drunk." *Id.*

¶ 18 There, we conceded that as a general rule, "violation of a safety standard set by statute or ordinance constitutes prima facie evidence of negligence." *Id.* at ¶ 20 (citing *Ryan v. Gold Cross Serv., Inc.,* 903 P.2d 423, 426 (Utah 1995)). We nevertheless began our multi-pronged rejection of the *Adkins* plaintiffs' attempt to vivify a common law dramshop claim with a transplanted Liquor Control Act requirement, stating that "we have established that there is no common law basis to support a third-party negligence claim against dramshops." *Id.* at ¶ 20. Application of the same principle leads us to hold that the ABCA's proscription against furnishing alcoholic beverages to intoxicated persons does not give rise to a claim in common law negligence in the factual setting presented here.

¶ 19 The Millers' argument that the Act does not preempt common law dramshop claims is wholly dependent on successfully establishing that their claim is cognizable at common law. Because we have determined that it is not, there is no common law claim subject to preemption.

¶ 20 The absence of a common law claim also disposes of the Millers' constitutional claim brought under the open courts provision of article I, section 11 of the Utah Constitution. We have interpreted article I, section 11 to withhold from the legislature the unchecked powers to extinguish existing legal rights and remedies. *Berry ex rel. Berry v. Beech Aircraft Corp.,* 717 P.2d 670, 679–80 (Utah 1985). There is no existing common law claim, under the facts in this case, which the legislature displaced when it codified the Act.

¶ 21 Finally, we reject the Millers' claim of violation of equal protection brought under article I, section 24 of the Utah Constitution. In the Millers' view, the Act violates the equal protection guarantees of our constitution by impermissibly excluding from its reach the class of injured persons, like the Millers, who are harmed by persons furnished alcoholic beverages by dramshops operated by the United States government. They insist that we must declare the Act unconstitutional to the extent that the FTCA does not waive immunity from it. Put another way, the Millers ask us to have the Utah Constitution intercede to invalidate a federal statute. This we have neither the power nor the inclination to undertake.

## CONCLUSION

¶ 22 Accordingly, we reaffirm that Utah's Dramshop Act is a strict liability statute. Additionally, we conclude that Utah does not recognize a common law cause of action in negligence for the sale of alcohol to persons who cause injury to third parties while under the influence of alcohol.

¶ 23 Chief Justice DURHAM and Judge ORME concur in Justice NEHRING's opinion.

¶ 24 Having disqualified herself, Justice PARRISH does not participate herein; Court of Appeals Judge GREGORY K. ORME sat.

DURRANT, Justice, concurring and dissenting:

¶ 25 I agree with the majority that the certified question put to us invites us to venture beyond the scope of our authority, and that our holding is appropriately limited to the nature of liability under our state Dramshop Act. I also agree with the majority that the Utah Dramshop Act is a strict liability statute. In my view, however, our analysis should stop there.

¶ 26 The federal district court certified the following question: "Whether a federal government employee, who ordinarily would be immune from suit in cases of strict liability, may be liable *under Utah's Dramshop Act* if the Plaintiffs establish negligence." (Emphasis added.) Our determination that Utah's Dramshop Act is a strict liability statute is responsive to that question. We go too far when we address the questions of whether Utah recognizes a common law negligence claim for the commercial sale of liquor to an intoxicated person and whether the Dramshop Act preempts this potential claim of common law negligence. While responding to those questions might well assist the federal district court with respect to the case before it, I think it imprudent to venture beyond the question actually certified to us.

¶ 27 It has been the consistent practice of this court to decline to address issues that are not presented or fairly included in the question or questions that we have accepted for review. Though it may, of necessity, leave certain legal questions unanswered, this practice is not without principled support. For instance, addressing only the question presented, whether it be a certified question from a federal court or a question presented in a petition for certiorari, provides notice to the parties of the issues that will be considered and promotes efficiency by allowing the parties to narrowly tailor their arguments to address only those issues.

Were we routinely to entertain questions not presented[,] ... much of this efficiency would vanish, as parties who feared an inability to prevail on the question present-

ed would be encouraged to fill their limited briefing space and argument time with discussion of issues other than the one on which [review] was granted.

*Yee v. City of Escondido,* 503 U.S. 519, 536, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (addressing the policies underlying Supreme Court rule 14.1(a), which governs the United States Supreme Court's review of petitions for certiorari). In addition, the framing of the question aids us in determining whether the issue is of such legal importance that we should grant review in the first place. *See id.*

¶ 28 By confining our review to the question presented, we also avoid addressing issues that the certifying court may have concluded were not appropriate for certification. The majority's approach could potentially embolden future litigants to "recast" a certified question, either broadening or narrowing the scope of the inquiry to the detriment of the certifying court, which may have wished to control the breadth of the issue certified.

¶ 29 In my view, we set a bad precedent when we use the opportunity presented by a certified question to address significant issues of law not included within the certified question. Instead, we should carefully confine our response to the certified question presented by the federal court. In this case, we have been asked by the federal court to resolve the question of whether Utah's Dramshop Act is a strict liability statute. We have responded in the affirmative. The issues regarding whether there is a common law dramshop cause of action, the nature of that cause of action, and the question of whether it is preempted by our Dramshop Act are questions not properly embraced by the question certified. Accordingly, I would refrain from answering them.

¶ 30 Justice WILKINS concurs in Justice DURRANT's concurring and dissenting opinion.