2005 UT 85

**Ric JEDRZIEWSKI; Teresa Jedrziewski; Chezlie Jedrziewski; Sierra Jedrziewski; Alexandra Wand; and Vanessa Wand, Plaintiffs and Appellees,**

v.

**Nick Glen SMITH; Roger Blain Evershed; Kurt Badger; William Hyde; Lihati Hansen Unga; Kyle Gates Durr; Jason Johnson; Jason Moses; Joel Iversen; Nick Ujifusa; and Does 5–20, Defendants and Appellants.**

Nos. 20040619, 20040622, 20040623.

Supreme Court of Utah.

Nov. 22, 2005.

Rehearing Denied Jan. 18, 2006.

Richard D. Burbidge, J. Ryan Mitchell, Jefferson W. Gross, Salt Lake City, for plaintiffs.

James S. Jardine, Justin T. Toth, Jacquelyn D. Rogers, Salt Lake City, for defendant Smith.

Steven A. Wuthrich, Montpelier, ID, for defendant Evershed.

David N. Mortensen, George L. Chingas, Jr., Provo, for defendant Badger.

Stephen J. Trayner, Robert W. Harrow, Salt Lake City, for defendant Hyde.

NEHRING, Justice:

¶ 1 Defendant Nick Smith's petition for interlocutory review was granted to take up questions concerning the effect of the apportionment scheme created by the Utah Liability Reform Act (LRA)[1] on the civil conspiracy cause of action and intentional tortfeasors.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 The following facts are alleged by the Plaintiffs in this civil action. During the fall of 2001, there were several altercations between West and East High students at school activities and private parties. Several of the West High students formulated a plan to retaliate against the East High students. After school on November 2, 2001, these West High students held a meeting to plan and organize an attack. Later that evening, approximately thirty West High students approached the home of Ric Jedrziewski looking for East High students who they believed were at a party at the Jedrziewski residence.

After being denied entry, some of the West High students broke several windows at the residence. At this point, many students began to flee to escape further incident. Some of the individuals inside the residence, including the plaintiffs named in this suit, began to pursue the students who were leaving. During this pursuit, Alexandra Wand caught one of the students, who struck her in the face and ran off. Ric Jedrziewski chased the student down the street. As Mr. Jedrziewski caught up to the student, several others returned to help their friend and brutally beat Mr. Jedrziewski with baseball bats.

¶ 3 Plaintiffs filed an action against Defendants in which they alleged causes of action for civil conspiracy, assault and battery, intentional infliction of emotional distress, and trespass to real property. One defendant, Nick Smith, filed a Notice of Intent to Allocate Fault and a Motion for Judgment on the Pleadings to resolve the issue of allocation of fault before the case went to trial. The district court denied the motion, and Mr. Smith requested an interlocutory appeal to this court to decide whether the LRA eliminated joint and several liability with regard to intentional torts.

## STANDARD OF REVIEW

¶ 4 The district court's decision was a matter of law, so we review for correctness.

---

1. At issue are the following statutory provisions of the Utah Liability Reform Act.

  1. Utah Code section 78–27–37 (2002), which, in relevant part, reads:
    (2) "Fault" means any actionable breach of legal duty, act, or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all its degrees, comparative negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability, and misuse, modification, or abuse of a product.
  2. Utah Code section 78–27–38, which, in relevant part, reads:
    (3) No defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributed to that defendant under Section 78–27–39.
    (4)(a) In determining the proportionate fault attributable to each defendant, the fact finder may, and when requested by a party shall, consider the conduct of any person who contributed to the alleged injury regardless of whether the person is a person immune from

suit or a defendant in the action and may allocate fault to each person seeking recovery, to each defendant, and to any other person whether joined as a party to the action or not and whose identity is known or unknown to the parties to the action . . . .
  3. Utah Code section 78–27–39, which, in relevant part, reads:
    (1) The trial court may, and when requested by any party shall, direct the jury, if any, to find separate special verdicts determining the total amount of damages sustained and the percentage or proportion of fault attributable to each person seeking recovery, to each defendant, and to any other person whether joined as a party to the action or not . . . .
  4. Utah Code section 78–27–40, which, in relevant part, reads:
    (1) Subject to Section 78–27–38, the maximum amount for which a defendant may be liable to any person seeking recovery is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant.
    (2) A defendant is not entitled to contribution from any other person.

*Utah Dep't of Transp. v. G. Kay Inc.*, 2003 UT 40, ¶ 5, 78 P.3d 612.

## ANALYSIS

¶ 5 The central fact of this case, around which all of the relevant legal issues orbit, is the status of all Defendants as alleged intentional tortfeasors. This case does not present us with the question of whether negligent tortfeasors may have their fault compared to that of intentional tortfeasors. That was the question that many people, but not the members of this court, believed was answered in *Field v. Boyer Co.*, 952 P.2d 1078 (Utah 1998). We will take up the riddle of *Field* later in this opinion, but it is important to note at the outset that *Field* involved negligent tortfeasors and this case does not. This difference matters. How to apportion shared fault is the issue at the heart of the LRA.

¶ 6 Dissatisfaction over the inherent unfairness of joint and several liability was the force that animated the legislature to codify the principle that the monetary exposure of a tortfeasor should be limited to his degree of fault.

¶ 7 This was the point made by Justice Stewart in his *Field* dissent[2] when he observed that "the word 'fault' does not denote intentional misconduct." *Id.* at 1086. He added that comparing a defendant's negligence with an intentional tort "results in an absurdity; it is a comparison of unlikes, of apples and oranges."[3] *Id.* at 1088. If it is conceptually difficult to describe how a fault-based apportionment scheme can assign fault where at least one of the parties has engaged in conduct typically associated with fault and one has engaged in intentional conduct in which fault plays no part, that difficulty is magnified considerably when one attempts to apportion fault among a class comprised exclusively of intentional tortfeasors.

¶ 8 The members of a class of intentional tortfeasors who would be eligible candidates to have their fault apportioned among them are commonly known as co-conspirators. Their conduct is actionable as a civil conspiracy. We find that it is unwieldy and inappropriate to analyze the liability status of co-conspirators using the LRA, a statute directed at correcting inequities in the allocation of accountability for the payment of damages among tortfeasors. We are similarly not satisfied that a principled analysis may be based on the *Field* discussion of whether the LRA's definition of fault applies to intentional tortfeasors. Instead, we will undertake our analysis within the framework of civil conspiracy, testing whether the LRA and its damages apportionment scheme modifies or eliminates this cause of action.

## I. THE LRA DOES NOT PREEMPT CIVIL CONSPIRACY

¶ 9 The district court and, to a lesser extent, the parties treat this case as hinging upon the determination of whether the LRA applies to intentional torts. However, the facts of this case require us to approach it analytically from the standpoint of civil conspiracy. The decision to look for a clarification of the LRA's position on the intentional/negligent dichotomy in order to resolve the question presented is understandable, but confuses the relationship between civil conspiracy and intentional torts. Knowing, intentional acts are required to form the foundation of a conspiracy. Lumping civil conspiracy into the realm of intentional torts would serve to eliminate civil conspiracy as a cause of action altogether, while the LRA was not about eliminating causes of action but apportioning liability. This distinction is

---

**2.** Justice Stewart correctly labeled his separate opinion, "concurring in part, dissenting in part." The importance of the way the members of the *Field* court interpreted the relationship between their separate opinions and the *Field* holding features prominently in solving the riddle of *Field*.

**3.** We recognize that conceptual obstacles notwithstanding, Justices Zimmerman and Russon determined that the LRA's definition of fault found in section 78–27–37 included intentional torts. We believe that whether or not a majority of this court ever has occasion to answer the question of whether the LRA as currently formulated requires apportionment of fault among intentional tortfeasors, the legislature has the authority to so declare.

crucial, as the following analysis will illustrate.

¶ 10 Defendants Kurt Badger and William Hyde argue that the LRA preempted the common law doctrine of civil conspiracy. They claim that the LRA and civil conspiracy are in "irreconcilable conflict" because the LRA applies to intentional torts. They feel that the application of the LRA to intentional torts would swallow up civil conspiracy by forbidding the holding of co-conspirators jointly and severally liable for the results of the conspiracy. By making this argument, they misconstrue the nature of civil conspiracy. In a conspiracy that results in tort liability, the cause of action for which the co-conspirators are ultimately held liable is not the tort resulting in the harm, but for the conspiracy that led to the harm. These are separate and distinct causes of action, and the LRA does not, nor could it constitutionally, reach the domain of civil conspiracy.

¶ 11 Utah courts have continuously recognized the validity of civil conspiracy claims. *See, e.g., DOIT, Inc. v. Touche, Ross & Co.,* 926 P.2d 835 (Utah 1996) (analyzing the use of a civil conspiracy claim to establish higher damages than previously claimed); *Alta Indus. Ltd. v. Hurst,* 846 P.2d 1282, 1290 n. 17 (Utah 1993) (stating that civil conspiracy claims can be established using the five factors established in *Israel Pagan Estate v. Cannon,* 746 P.2d 785, 790 (Utah Ct.App. 1987)). Utah courts have decided civil conspiracy claims after the amendments made by the legislature to the LRA, illustrating their belief that civil conspiracy has not been preempted. *See, e.g., Patterson v. Am. Fork City,* 2003 UT 7, 67 P.3d 466; *Waddoups v. Amalgamated Sugar Co.,* 2002 UT 69, 54 P.3d 1054; *Tanner v. Carter,* 2001 UT 18, 20 P.3d 332; *Coroles v. Sabey,* 2003 UT App 339, 79 P.3d 974; *Peterson v. Delta Air Lines,* 2002 UT App 56, 42 P.3d 1253.

¶ 12 In urging us to apply the LRA to intentional torts, Defendants claim that a three-justice plurality in *Field v. Boyer Co.,* 952 P.2d 1078 (Utah 1998), already so held. Using reasoning that depends entirely on the accuracy of their interpretation of *Field* for its success, Defendants argue that legislative inaction following *Field* indicates that the legislature was satisfied with the *Field* holding and that *Field* actually found that the LRA applies to intentional torts. They support this position by citing *Christensen v. Industrial Commission of Utah,* 642 P.2d 755, 756 (Utah 1982), in which this court held that "where a legislature amends a portion of a statute but leaves other portions unamended, or re-enacts them without change, the legislature is presumed to have been satisfied with prior judicial constructions of the unchanged portions of the statute and to have adopted them as consistent with its own intent."

¶ 13 Legislative inaction, however, did not endorse the application of the LRA to intentional torts because Defendants have misread *Field,* as will be discussed shortly. However, unlike *Field,* these civil conspiracy decisions that were reached after amendment of the LRA would be an appropriate situation in which to consider *Christensen.* These multiple opinions create a situation wholly unlike *Field,* as there is clear-cut action by the court that has been continuously reviewed and applied by the court, and the legislature has not spoken on the issue.

¶ 14 Despite numerous holdings ratifying the vitality of civil conspiracy which the legislature has not addressed while amending other portions of the LRA, Defendants argue that the LRA preempts the common law claim of civil conspiracy. The first step in analyzing whether a common law claim is preempted by an act is determining that there was a valid claim at common law. *Miller v. United States,* 2004 UT 96, ¶ 19, 104 P.3d 1202. If that can be established, then the courts look at legislative intent to determine whether the act preempts existing common law. *Gottling v. P.R. Inc.,* 2002 UT 95, ¶ 8, 61 P.3d 989 ("Whether legislation is intended to blanket a particular field—and thereby preempt existing or developing common law—is obviously a question of legislative intent."). Utah applies a two-tiered analysis in determining legislative intent for preemption purposes. When the language in a statute lacks explicit intent to preempt common law doctrine, courts consider whether the statute's "structure and purpose" reveal an implicit preemptive intent. *Id.* This

can be done in two ways: (i) the statute's regulatory scheme is so pervasive that the common law doctrine can no longer function, or (ii) the statute is in "irreconcilable conflict" with the common law. *Id.* Defendants argue that the second test applies because the common law cause of action of civil conspiracy is in irreconcilable conflict with the LRA.

¶ 15 We find that the LRA does not preempt civil conspiracy because even if the LRA applies to intentional torts, such a determination would not implicate conspiracy due to its nature as a cause of action distinguishable, independent, and unrelated to tort law.

¶ 16 Even if the legislature intended the LRA to preempt the common law doctrine of civil conspiracy, such a statute would raise grave constitutional concerns under the open courts doctrine of article I, section 12 of the Utah Constitution. We held in *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985), that a statute that eliminates a common law cause of action is unconstitutional unless one of two conditions is met:

> First, section 11 is satisfied if the law provides an injured person an effective and reasonable alternative remedy by due course of law for vindication of his constitutional interest. The benefit provided by the substitute must be substantially equal in value or other benefit to the remedy abrogated in providing essentially comparable substantive protection to one's person, property, or reputation, although the form of the substitute remedy may be different.
>
> Second, if there is no substitute or alternative remedy provided, abrogation of the remedy or cause of action may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective.

*Id.* at 679 (citations omitted). Our decision that the LRA did not intend to preempt civil conspiracy means that we need not take up a detailed analysis of the applicability of section 11 at this time. However, we do note that it would constitute a significant barrier to any attempt to eliminate civil conspiracy as a cause of action in the future.

## II. THE SOLUTION TO THE RIDDLE OF *FIELD v. BOYER*

¶ 17 All sides in this controversy claim *Field v. Boyer Co.*, 952 P.2d 1078 (Utah 1998), as their friend. Defendants see the case as congenial to their cause because to them it is about that portion of Justice Zimmerman's lead opinion that concludes that intentional tortfeasors are within the grasp of the LRA's broad definition of fault and therefore subject to its apportionment scheme. Plaintiffs are equally content with the case because they stand by the view that Chief Justice Zimmerman's opinion concerning the scope of the LRA was his own and not the court's. Moreover, Plaintiffs take comfort in Justice Stewart's strong explication of the view that intentional torts occupy a different realm than actions that are covered by the LRA.

¶ 18 We find that despite its fractured appearance, *Field* can be easily reassembled to provide a conclusive picture of this court's position on the applicability of the LRA to settings where there are both intentional and negligent tortfeasors.

¶ 19 Chief Justice Zimmerman made two points in his opinion. First, he concluded that the LRA does not permit fault to be apportioned to unnamed, non-immune persons. Next, he interpreted the LRA to require apportionment of fault to intentional tortfeasors.

¶ 20 Justice Howe concurred in the result. His vote inevitably raises the question, "what result?" The most direct result of *Field* was to deny the shopping mall defendants the opportunity to shift any of their potential fault to the unnamed person who raped the plaintiff in the mall parking lot. For the purposes of reaching this result, it mattered not at all that the unnamed person was an intentional tortfeasor. Unnamed persons were outside the LRA irrespective of the nature of their tortious conduct. In short, Justice Howe added a vote to Justice Zimmerman's first point.

¶ 21 As noted earlier, Justice Stewart wrote a concurring and dissenting opinion. Justice Durham joined him. Justices Stewart and Durham added third and fourth votes to that portion of Chief Justice Zimmerman's opinion that left unnamed tortfeasors free of the LRA. They dissented from his conclusion that the LRA covered intentional torts.

¶ 22 Justice Russon wrote separately and styled his opinion simply as a dissent. He expressed his views, however, on both of the issues addressed by Chief Justice Zimmerman. He agreed with the Chief Justice's position that the LRA was applicable to intentional torts, but parted ways with him on the issue of whether the LRA apportioned fault to unnamed persons. Justice Russon's characterization of his opinion as a dissent clearly discloses that his agreement with the Chief Justice on the subject of intentional torts did not implicate the outcome of *Field* and was dictum. In any event, it would be unprecedented to count a vote cast in an unqualified dissent as a vote for any proposition advanced in the lead opinion.

¶ 23 In summary, Chief Justice Zimmerman's belief that the LRA applies to intentional torts garnered two votes if it is to be construed as essential to the result: his own and Justice Howe's. It also received two votes if it is to be construed as dictum: that of the Chief Justice and Justice Russon. Thus the solution to the riddle of *Field* is that whether the LRA applies to intentional torts remains an open question.

¶ 24 We are mindful of Defendants' assertion that the legislature has deemed it unnecessary to amend the LRA to make explicit the application of its fault apportionment scheme to intentional tortfeasors when negligent tortfeasors are also present. Although, as we have explained, this is not the circumstance that we confront here, and our analysis is therefore focused elsewhere, we today clarify that the intentional tortfeasor question remains an open one so that the legislature may, if it elects, answer it.

## CONCLUSION

¶ 25 The Utah Liability Reform Act does not preempt the common law civil conspiracy cause of action. Because such a conclusion is dispositive of the question raised on this interlocutory appeal, we do not address the question of whether the LRA applies to intentional tortfeasors, instead leaving that question to be determined by the legislature or this court when such a determination is necessary for the disposition of a case at hand.

¶ 26 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Judge PAGE concur in Justice NEHRING's opinion.

¶ 27 Having disqualified himself, Associate Chief Justice WILKINS does not participate herein; District Judge RODNEY S. PAGE sat.