*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2020 UT 15**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STEVEN ERIC GRAHAM,
*Appellant,*

*v.*

ALBERTSON'S LLC,
*Appellee*.

No. 20180885
Heard December 9, 2019
Filed March 31, 2020

On Appeal of Interlocutory Order

Third District, Salt Lake
The Honorable Judge Heather Brereton
No. 180900781

Attorneys:

Kenneth B. Grimes, Salt Lake City, for appellant

Mark A. Wagner, Salt Lake City, for appellee

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

### INTRODUCTION

¶1 Steven Graham alleges Albertson's LLC (Albertson's) fired
him because he reported a workplace injury. Graham also alleges
that this termination is contrary to public policy and therefore
actionable. The district court granted Albertson's[1] motion for partial

---

[1] We again find ourselves troubled by how to depict the
possessive form of an already possessive proper noun. *See Utah State
Tax Comm'n v. See's Candies, Inc.*, 2018 UT 57, 435 P.3d 147. Once
again we "elect not to doggedly apply grammatical rules to the point

(continued . . .)

summary judgment, reasoning that the Utah Occupational Safety and Health Act (UOSHA) preempts his wrongful termination claim. Graham seeks interlocutory review of that decision. Because we find that UOSHA does not reflect a clear legislative intent to preempt common law remedies, we reverse.

## BACKGROUND

¶2 Roughly six months after Graham began working at Albertson's Salt Lake City Distribution Center, he injured his back. Graham reported the injury to his supervisor. After Albertson's terminated him, Graham filed a complaint with the Utah Occupational Safety and Health Division (the Division) alleging that Albertson's had "disciplined, harassed, and ultimately discharged [him] from his employment in retaliation for reporting his workplace injury." Graham further alleged that this termination violates Utah Code section 34A-6-203. Among other things, section 203 prohibits an employer from discharging or retaliating against an employee for filing a UOSHA complaint. *See* UTAH CODE § 34A-6-203.

¶3 The Division found Albertson's had not wrongfully terminated Graham. The Division concluded Graham's report of the workplace injury was not a "significant factor in, or the but-for cause of," Albertson's decision to terminate Graham. Specifically, the Division found Albertson's had presented sufficient evidence of a legitimate reason for termination unrelated to Graham's injury report.

¶4 Graham then filed a Request for Review with the Adjudication Division of the Utah Labor Commission. Graham moved for partial summary judgment. Graham again argued he was terminated for reporting his workplace injury. The administrative law judge (the ALJ) denied Graham's motion, finding a genuine issue of fact on the question of whether Graham resigned or was terminated.

¶5 The ALJ also dismissed Graham's claim for damages for reputational injuries, expenses for obtaining alternative employment, mental stress, as well as his claim for punitive damages. The ALJ concluded she was "unaware of any statute, administrative rule or historical precedent" addressing punitive and compensatory

---

of distraction." *Id.* ¶ 1 n.1. And so we will treat Albertson's "as a kind of possessive." *Id.* (citing BRYAN A. GARNER, GARNER'S MODERN ENGLISH USAGE 714 (4th ed. 2016)).

damages in an administrative proceeding, and as a result, the Division lacked jurisdiction over those damages.[2]

¶6   While the administrative proceedings were pending, Graham filed a complaint in the district court. Graham asserted three causes of action: 1) wrongful termination in violation of public policy, 2) breach of contract, and 3) breach of the implied covenant of good faith and fair dealing.

¶7   In the district court proceeding, the parties filed cross-motions for partial summary judgment focused on whether UOSHA preempted Graham's common law wrongful termination claim. The district court determined that, even though UOSHA does not contain an express exclusive remedy provision, "when examining the legislative intent behind the UOSH Act, the court finds that in passing the UOSH Act, the legislature put in place a comprehensive piece of legislation to provide for the safety and health of workers and provided a coordinated plan to establish standards to do so." The district court also found that a "preemptive intent is implied by the structure and purpose of the UOSH Act. The UOSH Act establishes standards, procedures, a scheme of regulation, and a bureaucratic system to implement its aims in a timely and cost-effective approach." This caused the district court to conclude that UOSHA preempted Graham's claim for wrongful termination.

¶8   Graham filed an interlocutory appeal asking us to review the grant of summary judgment on his wrongful termination cause of action.

## ISSUE AND STANDARD OF REVIEW

¶9   "We review a trial court's summary judgment ruling for correctness and afford no deference to its legal conclusions." *Gottling v. P.R. Inc.*, 2002 UT 95, ¶ 5, 61 P.3d 989 (citation omitted) (internal quotation marks omitted). "A district court's interpretation of a statute is a question of law, which we . . . review for correctness." *Bell Canyon Acres Homeowners Ass'n v. McLelland*, 2019 UT 17, ¶ 7, 443 P.3d 1212 (alteration in original) (citation omitted) (internal quotation marks omitted).

## ANALYSIS

¶10 Graham challenges the district court's conclusion that UOSHA preempts his common law wrongful termination claim. We

---

[2] Graham has not challenged this ruling.

have articulated a two-part test to decide whether a statute preempts a common law cause of action. *See Retherford v. AT&T Commc'ns of Mountain States, Inc.*, 844 P.2d 949 (Utah 1992). First, we ask if UOSHA reveals either an express or implicit legislative intent to preempt common law causes of action. *See id.* at 961. If it does, we inquire if Graham's wrongful termination claim falls within the scope of what the Legislature intended UOSHA to preempt. *See id.*

¶11 But before we examine the district court's application of *Retherford* to UOSHA, we pause to observe that the *Retherford* test appears to skip a step. We have stated elsewhere that when analyzing a preemption question, we first begin by "determining that there was a valid claim at common law." *Jedrziewski v. Smith*, 2005 UT 85, ¶ 14, 128 P.3d 1146.[3] Only after a plaintiff has established that she has a valid common law claim do courts inquire about preemptive intent. *See id.*[4]

---

[3] We have noted that an "at-will employee whose employment has been terminated in violation of a clear and substantial public policy may sue for wrongful termination." *Ray v. Wal-Mart Stores, Inc.*, 2015 UT 83, ¶ 12, 359 P.3d 614. And we have identified four categories of public policies a plaintiff may use to provide the basis for her wrongful termination claim: 1) refusing to commit an illegal or wrongful act; 2) performing a public obligation, such as jury duty; 3) exercising a legal right or privilege; and 4) reporting an employer's criminal activity to a public authority. *Id.* ¶ 13.

[4] Keeping these inquiries separate has important implications for the burden of proof. The *plaintiff* bears the burden of proof on the question of public policy—that is, the plaintiff must carry the burden of establishing a "clear and substantial policy" in positive law sufficient to overcome the common law presumption of at-will employment. *See Ray*, 2015 UT 83, ¶ 12. This burden falls on the plaintiff because the default setting provides no claim for wrongful termination in an at-will employment arrangement. *See e.g.*, *Rackley v. Fairview Care Ctrs., Inc.*, 2001 UT 32, ¶¶ 12–14, 23 P.3d 1022.

If the plaintiff can show that she possesses a basis in law to adjust the default and assert that she was wrongfully terminated in violation of public policy, the burden then shifts to the *defendant* to demonstrate that the Legislature intended the statute to preempt the common law remedy. *See Jedrziewski*, 2005 UT 85, ¶ 14.

Our cases have not always made this distinction clear. And the possibility for confusion on the burden of proof may be part of the

(continued . . .)

¶12 Here, it appears that Albertson's, for the purpose of the summary judgment motion, did not challenge whether Graham possessed a valid cause of action for termination in violation of public policy. And because that issue was not presented to the district court on summary judgment, the district court assumed that Graham had a common law cause of action. Because the issue is likewise not presented to us, we offer no opinion on that question. But at the risk of sounding too metaphysical, we caution those who look to *Retherford* for guidance to remember that a common law cause of action must exist before it can be preempted.

¶13 We have noted that a *Retherford* analysis first instructs a court to "look at legislative intent to determine whether the act preempts existing common law." *See Jedrziewski*, 2005 UT 85, ¶ 14; *see also Retherford*, 844 P.2d at 961. We start, of course, with the statute's plain language. And we look to see if the Legislature has included a clear expression of an intent to preempt, such as an exclusive remedy provision. *See e.g.*, UTAH CODE § 34A-6-101 *et seq.*[5]

¶14 Even if a statute does not include an "explicit intent to preempt common law doctrine, courts consider whether the statute's 'structure and purpose' reveal an implicit preemptive intent." *Jedrziewski*, 2005 UT 85, ¶ 14 (citation omitted). "This can be done in two ways: (i) the statute's regulatory scheme is so pervasive that the common law doctrine can no longer function, or (ii) the statute is in 'irreconcilable conflict' with the common law." *Id.* (citation omitted). When we look at the pervasiveness of the statutory scheme, we do so to see if the structure is "so pervasive as to make reasonable the inference that [the legislature] left no room for the [common law] to supplement it." *Gottling v. P.R. Inc.*, 2002 UT 95, ¶ 8, 61 P.3d 989 (alterations in original) (citation omitted).

¶15 The district court followed *Retherford* and began by looking for express legislative intent to preempt. The district court noted that

---

reason why this case has come to us in its current posture. We do not delve into the matter in any great detail here. We simply flag this point in the interest of clarifying a legal nuance that may be of relevance on remand and in future cases.

[5] For example, the Utah Antidiscrimination Act contains an exclusive remedy provision. UTAH CODE § 34A-5-107(15) ("The procedures contained in this section are the exclusive remedy under state law for employment discrimination . . . .").

UOSHA contains no exclusive remedy clause. So it turned to UOSHA's purpose and structure to assess whether it could infer an intent to preempt. There is much to like in the district court's analysis. Indeed, we see many parallels between the way the district court analyzed UOSHA and the analysis we applied to the Utah Antidiscrimination Act (UADA) in *Gottling*. *See id.*

¶16 The district court examined UOSHA and concluded that it "establishes standards, procedures, a scheme of regulation, and a bureaucratic system to implement its aims in a timely and cost-effective approach." Based on this, it concluded that the Legislature intended to put in place "a comprehensive [act] to provide for the health and safety of workers and provided a coordinated plan to establish standards to do so."

¶17 This mirrors what we did in *Gottling*. There, we first noted that UADA created an administrative remedy against large employers, agencies, labor organizations, and others who "aid, incite, compel, or coerce" to commit prohibited discriminatory behavior. *Id.* ¶ 12. We also considered the "substantial bureaucratic system" for implementing UADA's goals, the delegation of power to receive and investigate complaints, UADA's directing how complaints are investigated and studied, and that UADA "provides for the formulation of plans for elimination of discrimination, the issuance of publications designed to promote good will and eliminate discrimination, and the proposal of legislation designed to eliminate discrimination." *Id.*

¶18 We next looked at UADA's structure. *Id.* ¶ 13. We noted that UADA established a comprehensive legislative scheme, exempted small employers from its administrative remedy, and created an elaborate remedial process. *Id.* Taking all of this together, we opined that even if the Legislature had not included an exclusive remedy clause, UADA's structure and purpose demonstrate that the Legislature intended that UADA preempt common law remedies. *See id.*

¶19 The district court's order permits us to see the similarities between the frameworks the Legislature implemented in UOSHA and UADA. And if there were nothing else in UOSHA that spoke to preemption, we might agree with the district court that UOSHA's structure and purpose, much like UADA's, permits an inference that the Legislature intended UOSHA to occupy the field and preempt common law remedies.

¶20 But, as Graham argues, UOSHA contains a provision that UADA lacks.

¶21 Utah Code section 34A-6-110 states:

> (1) Nothing in this chapter is deemed to limit or repeal requirements imposed by statute or otherwise recognized by law.

> (2) Nothing in this chapter shall be construed or held to supersede or in any manner affect workers' compensation or enlarge or diminish or affect the common-law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, occupational or other diseases, or death of employees arising out of, or in the course of employment.

¶22 Subsection 110(1)'s sweep is broad. The Legislature instructs that UOSHA does not "limit or repeal requirements imposed by statute *or otherwise recognized by law.*" § 34A-6-110(1) (Emphasis added). Graham's claim of wrongful termination in violation of public policy would appear to fall into the category of a requirement "otherwise recognized by law," which the statute mandates UOSHA not disturb. *See id.*; *see also Ray v. Walmart Stores Inc.*, 2015 UT 83, ¶¶ 12–15, 359 P.3d 614 (discussing the common law claim of wrongful termination in violation of public policy).

¶23 The district court did not account for subsection 110 in its order. And that is a problem. The point of the exercise *Retherford* mandates is to see if we can infer the Legislature's intent concerning preemption from the way it crafts the regulatory scheme. It is very difficult to infer such an intent in the face of language suggesting that the Legislature did not intend UOSHA to affect any other legal requirements.

¶24 Albertson's argues that section 110 should be understood as applying only to "the then-existing elaborate body of statutory and common law relating to the rights of employees, employers, and third parties, for *injuries, diseases, or death of employees.*" Albertson's finds support for that reading in section 110's heading entitled "Requirements of other laws not limited or repealed—Worker's compensation or rights under other laws with respect to employment injuries not affected." We normally do not look to a statute's headings to find the law's substantive terms. But we "have noted that when we need help understanding an ambiguous provision, titles are 'persuasive and can aid in ascertaining [the statute's] correct interpretation and application.'" *Jensen v. Intermountain Healthcare, Inc.*, 2018 UT 27, ¶ 29, 424 P.3d 885

(alteration in original) (citation omitted); *see also State v. Gallegos*, 2007 UT 81, ¶ 16, 171 P.3d 426.

¶25 Albertson's does not aver that section 110 is ambiguous and that we should therefore look to the heading for guidance. But even if section 110 were ambiguous, the heading does not prove Albertson's point. Only part of the heading speaks to workers' compensation and other laws concerning employee injuries. The first part of the heading states, "Requirements of other laws not limited or repealed." § 34A-6-110. This mirrors the substance of section 110. Subsection 110(1) contains the general statement that nothing in the chapter limits or repeals any existing legal requirements. And subsection 110(2) contains the more specific reference to workers' compensation and related laws.

¶26 Albertson's does not address the meaning of subsection 110(1). And the interpretation Albertson's proffers renders subsection 110(1) superfluous because if subsection 110(1) refers only to laws regarding employment injuries, it is wholly duplicative of subsection 110(2). We strive to avoid superfluousness when we interpret statutory language. *See Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 12, 284 P.3d 600 ("Wherever possible, we give effect to every word of a statute, avoiding '[a]ny interpretation which renders parts or words in a statute inoperative or superfluous.'" (alteration in original) (quoting *State v. Arave*, 2011 UT 84, ¶ 28, 268 P.3d 163)); *see also United States v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011) ("As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." (citation omitted) (internal quotation marks omitted)).

¶27 Simply stated, subsection 110(1), while not an exclusive remedy provision, undermines our ability to conclude that UOSHA's structure and purpose give rise to an inference that the Legislature intended UOSHA to preempt common law remedies.

¶28 We reverse the district court's grant of Albertson's motion for partial summary judgment.

## CONCLUSION

¶29 The district court correctly applied the test adopted in *Retherford* to analyze whether UOSHA preempts Graham's wrongful termination claim. However, it erred when it concluded Graham's claims were preempted. UOSHA contains no exclusive remedy provision. And section 34A-6-110(1)'s instruction that UOSHA does not limit or repeal other legal obligations prevents us from concluding that UOSHA's structure and purpose demonstrate a

legislative intent to preempt common law causes of action. We reverse the district court and remand for further proceedings.

---